SINCLAIR CONTRACTING CO., INC., Plaintiff, *v.* JOSEPH WALZER, Defendant.

Municipal Court of New York, Borough of Manhattan, Eighth District, December 15, 1942.

*Howard A. Rosenberg* for plaintiff.

*Lazarus Maistelman* for defendant.

GENUNG, J. The plaintiff sued to recover rent and other charges due under a lease made between plaintiff, as landlord, and Maron-Qalzer Fur Corporation, Louis Maron and Joseph Walzer, the defendant herein, as "Tenant." The singular "tenant" is used throughout the instrument. The lease by its terms expires January 31, 1943.

On March 30, 1942, the corporation assigned for the benefit of creditors, the assignment being filed in the New York County Clerk's office on March 31, 1942. On April 9, 1942, the corporation was adjudicated a bankrupt. Louis Maron was adjudicated a bankrupt on April 24, 1942. Paragraph 20 of the lease reads as follows: "20. If at any time during the term hereby demised, a petition shall be filed, either by or against tenant, in any court or pursuant to any statute either of the United States or of the State of New York, whether in bankruptcy, insolvency, for the appointment of a receiver of tenant's property, or because of any general assignment made by tenant of Tenant's property for the benefit of tenant's creditors, then immediately upon the happening of any such event, and without entry or other act by landlord, this lease shall expire *ipso facto,* cease and come to an end with the same force and effect as if the date of the happening of any such event were the date herein fixed for the expiration of the term of this lease. * * * "

The remaining language of the clause set forth the method to be followed in computing the landlord's damages on the happening of the events referred to.

The trustee in bankruptcy of the corporation surrendered possession of the premises on April 21, 1942. The premises were relet for a term commencing June 1, 1942, expiring beyond the term of the original lease and at a greater rental. The plaintiff now seeks from this defendant March, April, and May, 1942, rent at $220.83 a month, water-sprinkler charges of twenty-five dollars which became due prior to March 30, 1942, brokerage expense of $112.50 incurred in reletting, decorating expense of $150.00, and attorney's fees incurred by reason of the assignment and subsequent bankruptcies. The plaintiff has in its possession $208.33 deposited with it as security to be returned at the expiration of the lease "if all of the terms, covenants and conditions of this lease and of any renewal have been fully complied with."

The defendant contends: (1) That the general assignment by the corporation on March 30, 1942, causes the lease by virtue of paragraph 20 to " *ipso facto* cease and come to an end " on March 31, 1942, and therefore the rent for April and May, 1942, never became due and payable. (2) That as against the March rent and sprinkler charges he was entitled to an offset of $208.33, the amount of the security deposit, and an offset of $14.56, the amount received from the new tenant as sprinkler charges for the balance of 1942. (3) That the plaintiff's measure of damages is limited to the provisions of paragraph 20, which does not provide for payment of brokerage charges, et cetera.

The plaintiff contends: (1) That the lease gave it three separate and distinct tenants and (2) that the liability of each was joint and several and survived the bankruptcy of the others.

The situation presented is novel and there appear to be no decisions squarely in point. The Court of Appeals, however, has passed on the legal effect of language used in a bankruptcy clause similar to the clause used in this case. In *Murray Realty Co.* v. *Regal Shoe Co.* (265 N. Y. 332) the clause read " that an adjudication that the lessee is bankrupt shall *ipso facto* end and terminate this lease, and any rights thereunder." The court at page 335 held: " It is easy for the draughtsman of a lease to provide that an adjudication in voluntary bankruptcy shall terminate the lease only if the landlord shall so elect. That is not the language of the lease before us. By a process of judicial construction plain words — ' *ipso facto* end and terminate ' — are made to read as if they were a lessor's covenant merely. We are constrained to accept the construction of the trial justice and say that the clause under consideration is a conditional limitation by reason of which the lease expired upon an adjudication that the lessee is bankrupt. Bankruptcy constitutes a breach of the lease. It thereupon ends and terminates, *ipso facto.*"

Following the reasoning of the Court of Appeals it is clear that the general assignment for the benefit of creditors by the corporation *ipso facto* causes the lease to terminate on March 31, 1942. There was no provision made in the lease that if there were cotenants, the bankruptcy of one would not terminate the lease as against the other. It would have been a simple matter to provide for a survival of liability against the solvent tenant. Section 16 of the Bankruptcy Act (U. S. Code, tit. 11, § 34) cited by the plaintiff is not in point. That section provides that the liability of a codebtor or guarantor shall not be altered by the bankrupt's discharge. The section, however, presupposes an

existing or continuing liability, the recovery of which as against the bankrupt is prohibited by the bankruptcy statute. It does not alter the status or effect of the claim under which liability is sought to be charged as against the codebtor or guarantor. Here the instrument under which the liability was incurred ceased to have any effect because the landlord so chose, and all liability under it ceased when the instrument " *ipso facto* " was terminated on March 31, 1942.

With respect to the claim for brokerage, decorating, and legal expense the plaintiff's right to such claim for damages comes from paragraph 21 of the lease. That clause seemingly provides for damages sustained by the landlord by reason of defaults other than those set forth in paragraph 20. No provision is made for these items in paragraph 20, and the plaintiff is restricted to the measure of damages set forth therein.

With respect to defendant's claim for an offset of $208.33 representing the security deposit, there is no proof here that this deposit is the sole property of the defendant. It appears to have been a joint deposit, and the plaintiff's contention that the trustees in bankruptcy of the insolvent tenants may have prior claims is well taken.

The defendant is liable for the March rent and the sprinkler charges of twenty-five dollars, less the sum of $14.56 received by the plaintiff from the new tenant.

Judgment for the plaintiff in the sum of $231.27.