In the Matter of PENN CENTRAL TRANSPORTATION CO., Debtor.

In re Proposed Settlement with 32ND STREET BUILDING CORP.

No. 70–347.

United States District Court, E. D. Pennsylvania.

June 16, 1972.

John E. Wallace, Jr., Philadelphia, Pa., for Trustees, Penn Central Trans. Co.

Ballard, Spahr, Andrews & Ingersoll by Richardson Blair, Philadelphia, Pa., for Girard Trust Bank and Institutional Investors, Penn Central Group.

Howard H. Harris, Obermayer, Rebmann, Maxwell & Hippel, Philadelphia, Pa., for 32nd Street Bldg. Corp.

## OPINION AND ORDERS
## NOS. 785 and 786

[Re: Proposed Settlement with 32nd Street Building Corporation

FULLAM, District Judge.

The Trustees of the Debtor have petitioned for approval of a settlement agreement with the 32nd Street Building Corporation ("lessor") from whom the Debtor leases the first through ninth floors and part of the basement of the Food Fair Building at 15 N. 32nd Street in Philadelphia.

In 1961, the Debtor's predecessor entered into the lease for a 20-year term to commence on July 1, 1963. The lease called for an annual rent of $783,000 plus additional rent reflecting the lessor's allocable share of increases in operating expenses and taxes; in 1971, this additional rent was $156,099.

The lease contained a provision giving the lessor the right to terminate the lease in the event the tenant became the subject of bankruptcy proceedings. When these reorganization proceedings began, the Debtor owed 32nd Street $104,000, which remains unpaid. On January 13, 1971, 32nd Street served notice on the Trustees that the lease would terminate in 30 days. Thereafter, the Trustees delivered to the lessor a letter of affirmance of the lease. One day later, lessor filed a petition in these proceedings to reclaim the leasehold from the Trustees.

Negotiations between the lessor and the Trustees have now yielded this proposed agreement. Essentially, it provides that the rent will be increased by $51,000 per year for the remaining twelve years of the original term. The rent for two five-year optional extension periods will be $10,000 less than the new total rent. The Trustees will relinquish the first floor of the building, now used as a cafeteria, to the lessor in exchange for a $35,000 yearly reduction in rent. The agreement also includes the Trustees' agreement to sell to lessor's nominee 43,750 square feet of nearby land fronting on John F. Kennedy Blvd. for $450,000 cash. Independent appraisers value this parcel at $349,000 and $380,000.

Undoubtedly, the proposed settlement is somewhat more favorable to the lessor than the present lease. The basic question to be decided is whether the Trustees are justified in making these concessions to the lessor in exchange for the lessor's abandonment of its attempt to terminate the lease and reclaim the property.

Two additional factors weigh heavily in the balance: (1) if the Trustees were to vacate the premises, they would incur relocation expenses aggregating approximately $1.6 million; and (2) the present market for equivalent space is approximately $5 per square foot per

year, whereas under the original lease the cost is approximately $3.60 per square foot, and under the proposed settlement the rental would be approximately $3.80 per square foot.

Thus, if it were altogether clear that the landlord would be successful in regaining possession of the premises, the price which the Trustees now propose to pay in order to obviate that result would be modest indeed. On the other hand, if it were altogether clear that the landlord could be required to carry out all of the terms of the original lease, unaffected by the tenant's bankruptcy, then the proposed settlement would not be justified. In essence, it is the position of the Trustees that the law is not entirely clear, and that the proposed settlement represents an acceptable compromise, a reasonable price to pay for avoiding the risks of adverse determination of the legal issues.

It is therefore necessary to review briefly the legal problems involved. It must be emphasized, however, that the purpose of this review is not to determine how this Court would decide the legal issues if the matter were litigated, or what might be the ultimate outcome of such litigation, but rather to ascertain whether the legal problems are sufficiently substantial to justify the Trustees' desire to avoid them.

■ Section 70(b) of the Bankruptcy Act provides that clauses in leases creating a right to terminate in the event of bankruptcy are enforceable in bankruptcy. To the extent that this provision is "consistent with the provisions" of Section 77, Section 70(b) is applicable in railroad reorganization proceedings. Section 77(l). *See* Smith v. Hoboken Railroad Warehouse and Steamship Connecting Co., 328 U.S. 123, 66 S.Ct. 947, 90 L.Ed. 1123 (1946). If enforcement of the forfeiture provision would unduly interfere with the operation of the railroad, or with the formulation and implementation of a plan of reorganization, enforcement could be enjoined by a reorganization court. Continental Illinois National Bank and Trust Co. v. Chicago, Rock I. and Pac. Ry. Co., 294 U.S. 648, 55 S.Ct. 595, 79 L.Ed. 1110 (1935); In re Fleetwood Motel Corp., 335 F.2d 857 (3d Cir.1964).

Thus, a decision as to whether or not the lessor in the present case could be enjoined from enforcing the forfeiture would depend initially upon a factual assessment as to the degree of interference such forfeiture would cause to the operation of the railroad, and the adverse impact it might have upon the reorganization process. While it seems probable that injunctive relief could properly be granted, there is room for argument to the contrary. The reported cases where such relief was upheld have involved more direct and substantial impact; moreover, the courts have stressed an element of "windfall" to the lessor by reason of improvements made by the bankrupt tenant. *E.g.,* In re Fleetwood Motel Corp., *supra.* There is no assertion of such improvements here.

More importantly, it must be recognized that, even if the Trustees were successful in preventing the forfeiture, that would not necessarily end the matter. It is far from clear that the duration of such injunctive relief would be co-extensive with the balance of the lease term, or that retention of possession of the demised premises under such circumstances would not give rise to substantial additional claims for use and occupancy.

■ In short, it is not altogether clear that the Trustees would be successful if they were to litigate the legal issues involved, and there is substantial doubt that even successful litigation by the Trustees would ultimately be to the benefit of the Debtor's estate. I therefore conclude that there is adequate support for the Trustees' exercise of business judgment. The proposed settlement agreement will be approved.

The property to be conveyed to the lessor pursuant to the settlement agreement represents approximately one-half of a tract of land which, for purposes of

local taxes, has been treated as a single unit. The City of Philadelphia contends that the lien of unpaid taxes on the entire tract should attach to the proceeds, and that penalties and interest are included in the lien. These issues need not be resolved at this time. All liens on the property conveyed will attach to the proceeds, but just what those liens may be will remain open for later adjudication if necessary.

After the hearing in this matter, a question has arisen as to whether all parties claiming liens against the property received notice of the hearing. Pursuant to their request, the Trustees will be required to give notice to all such persons, and to refrain from consummating the conveyance until all such lien claimants have had an opportunity to object to the proposed sale, and until any objections which may be expressed have been disposed of.