Chief Judge Breitel.
The tenant under a valuable long-term lease brought this action for a declaratory judgment to relieve it from the exercise of landlords’ option to terminate the lease under the lease bankruptcy clause. It appeals from determina *612 tions in favor of landlords in the courts below on cross motions for summary judgment.
The petition for involuntary bankruptcy filed against tenant was dismissed on the merits within 60 days, under circumstances to be described. The issue is whether the early dismissal of the petition would have justified equitable intervention to avoid a forfeiture of the lease, despite the literal application of the bankruptcy clause.
There should be an affirmance. In the absence of fraud, collusion, or overreaching exploitation by landlords of an improper or unjustified bankruptcy petition, judicial intervention to undo the effect of the bankruptcy clause would be without warrant in law or equity.,
A restaurant, eventually to be quite successful, was opened at the leased premises in 1953. The last lease renewal in 1969 would expire by its term in 1989. Death in 1970 of one associate in the enterprise and the later accidental injury to his surviving widow, who had continued in the business, brought about a change in the ownership and operation of the restaurant. As often happens, the new owners did not do so well. They eventually sold their interest, represented by shares of stock in the tenant corporation, which had been held in escrow to secure the sellers. One Stadler was the buyer. The very next month the rent was not paid. In that same month, however, a petition in involuntary bankruptcy was filed against the corporate tenant by three creditors. The sellers, exercising their rights under the security escrow agreement, resumed control and advised the landlords that they would operate or sell the restaurant, clear up all rental defaults, and take steps to dismiss the bankruptcy petition.
The sellers kept their word: they tendered the rents and over landlords’ objection in bankruptcy court obtained dismissal of the bankruptcy petition on the merits. But these results were accomplished only after the restaurant had shut down, a bankruptcy receiver was in possession, one of the three petitioning creditors had “ resigned ” as a petitioning creditor, and the sellers on behalf of the corporate tenant had effected a 20% composition with unsecured creditors. The settlement with creditors was payable over a three-year period, provided the instant lease was judicially determined to have survived the *613 filing of the bankruptcy petition and the landlords’ election to terminate it under the bankruptcy clause.
These are the salient facts. They demonstrate the value of the leasehold, the authentic effort by the sellers to restore the shattered enterprise, and the serious financial deterioration sustained by the corporate tenant in a rather short period of time. The question then becomes narrowly whether landlords are entitled to resort to the right to terminate the lease under the bankruptcy clause, or whether in law or equity some circumstance would allow or require a court to intervene and prevent a forfeiture of the lease.
In pertinent part, the bankruptcy clause reads: “It is expressly understood and agreed that * * * if the Tenant shall file or there be filed against a Tenant a petition in bankruptcy # * * or Tenant be adjudicated a bankrupt * * * the Landlord may, if the Landlord so elects, at any time thereafter terminate this lease and the term hereof ”. It is not disputed that landlords elected to terminate the lease and did so timely in proper form.
Notably, the particular clause distinguishes between a filing of a petition for bankruptcy, voluntary or involuntary, and an adjudication in bankruptcy. Either event gives landlords an election to terminate the lease, and this is only halfheartedly disputed by tenant. Hence, the mere filing of the petition against tenant triggered the right of election (see Geraghty v. Kiamie Fifth Ave. Corp., 210 F. 2d 95, 97; Matter of Sound, Inc, 171 F. 2d 253, 254, cert. den. 336 U. S. 962; Matter of Scholtz-Mutual Drug Co., 298 F. 539, 540; Saks v. Stinemetz & Son Co., 293 F. 1005, 1008-1009; see, also, Murray Realty Co. v. Regal Shoe Co., 265 N. Y. 332, 334—335; Sinclair Contr. Co. v. Walzer, 179 Misc. 228, 230-231; see, generally, Lease — Terminability on Insolvency, 115 A. L. R. 1189, 1190, 1191; Ann., 168 A. L. R. 504, 505).
Tenant argues, however, that dismissal of the bankruptcy petition on the merits changes the character of the event and disentitles landlords to terminate the lease. The argument is self-defeating since the dismissal perforce must occur after the filing and there is no dispute that the filing is a sufficient event to trigger the landlords’ right of election. It is quite another matter, however, for the dismissal of the petition on the merits *614 to be weighed by a court in order to relieve a party from a forfeiture. But the dismissal on the merits would be but one factor among many in determining whether the landlords’ rights, as literally spelled out in the bankruptcy clause, may be recast.
Moreover, courts are alert to inequalities of bargaining power and the inclusion by adhesion of onerous clauses — the bankruptcy clause might well be one (Restatement, 2d, Contracts, T.D. Nos. 1-7, § 234 and comment). In such circumstances, a court will be even more ready to examine the cases to make sure that an overreaching to exploit a technical breach will not work a substantial forfeiture (cf., e.g., Paragon Homes v. Carter, 56 Misc 2d 463, 465, affd. 30 A D 2d 1052; Jefferson Credit Corp. v. Marcano, 60 Misc 2d 138, 140-142; see, generally, 1 Corbin, Contracts [1963 ed.], § 128; 20 N. Y. Jur., Equity, §§ 70, 71; especially the interesting elaboration in United States v. Bethlehem Steel Corp., 315 U. S. 289, 327-330 [Frankfurter, J., dissenting] ; Henningsen v. Bloomfield Motors, 32 N. J. 358, 388-406). And, of course, if the landlords had been involved in a fraud or collusion in bringing about the filing of the bankruptcy petition, they would be estopped to rely on the clause.
In many areas of property law it has been accepted for some time that equity may intervene to prevent a forfeiture of a substantial interest despite a technical breach or omission by the holder of the interest. It has been true of mortgages since the onset of equity (see, e.g., Noyes v. Anderson, 124 N. Y. 175, 179-181; Caspert v. Anderson Apts., 196 Misc. 555, 558-560 [Wasservogel, Off. Ref.]; see, generally, 5 Williston, Contracts [3d ed.], § 771; 2 Pomeroy, Equity Jurisprudence [5th ed.], § 455a). It has been true of options to purchase, to renew leases, and the like (see, e.g., Wappler v. Woodbury Co., 246 N. Y. 152, 156-157 [Cardozo, Ch. J.]; Giles v. Austin, 62 N. Y. 486, 491-494; Wienerwald 8th St. v. Third Brevoort Corp., 38 A D 2d 525; see, generally, Restatement, Contracts, § 302; 2 Pomeroy, Equity Jurisprudence [5th ed.], §§ 448-460, especially § 453, op. cit.; McClintock, Equity [2d ed.], § 33; Lease — Forfeiture — Relief, Ann., 31 ALR 2d 321, 327-328; Lease — Notice to Renew, Ann., 44 ALR 2d 1359, 1364).
The rule last discussed has been frequently applied to lease forfeiture in the bankruptcy courts, albeit coupled with special statutory provisions and the bankruptcy court’s overriding *615 power to protect creditors as distinguished from the tenant (see Matter of Queens Blvd. Wine & Liq. Corp. v. Blum, 503 F. 2d 202, 204-207; Weaver v. Hutson, 459 F. 2d 741, 743-744, cert. den. 409 U. S. 957; Matter of Fleetwood Motel Corp., 335 F. 2d 857, 862-863; cf. Smith v. Hoboken R. R. Co., 328 U. S. 123, 126-128; Matter of Tale Express System v. Nogg, 362 F. 2d 111, 117; Matter of Penn Cent. Transp. Co., 347 F. Supp. 1351, 1353). In reason, there should be no cause to restrict the rule and not apply it in a State court to a bankruptcy clause. But whether that be so or not, this case does not present a proper occasion for its application.
However sincere and strenuous the efforts of the sellers, it is evident from the occurrences in this case that the restaurant had come upon evil and uncertain times. It is precisely such a change of circumstance (provided a triggering event, as stipulated in the lease, occurs) which justifies a landlord in electing to terminate the lease.
The dismissal of the bankruptcy proceedings, on the merits it is true, did not negate the serious condition of the enterprise making its future uncertain. There was no doubt, and indeed it was asserted by the sellers, that they would try to sell the enterprise. The 20% composition with the unsecured creditors was indicative of the distress surrounding the enterprise. There was therefore ample confirmation that the filing of the bankruptcy petition was justified and not the product of causeless, malicious, or collusive behavior by the creditor petitioners. In such circumstances for a court in the name of equity to have undone the contractual provision giving landlords the right to terminate the lease would have been an indiscretion which could not be sustained.
The Federal bankruptcy cases relied upon by the tenants do not support their view. In Matter of Queens Blvd. Wine & Liq. Corp. v. Blum (503 F. 2d 202, supra), the court narrowly circumscribed each of the two significant factors which might avoid the harsh result of a bankruptcy clause, namely, waiver by the landlord, and protection of the debtor and its creditors provided the landlord remains secure. In doing so it emphasized the generality of the principle that bankruptcy clauses be enforced, and that they are necessary for the protection of landlords. The Federal Court of Appeals affirmed the deter- *616 ruination of the District Court because of its findings, substantiated by the record. The District Court had found that the enterprise in question was now a profitable one which would be destroyed by the lease forfeiture. It also found that the landlord was protected by a sizable security deposit. Hence, it concluded that the bankruptcy statute (Bankruptcy Act, § 70, subd. [b]; U. S. Code, tit. 11, § 110, subd. [b]), providing that a bankruptcy clause was enforceable, did not control.
An equally recent Federal ease, cited by landlords, with a contrary outcome, is Matter of Overmyer Co. (383 F. Supp. 21). Belying on the same principle and relying on many of the same authorities as the Que&ns Blvd. case, the court reasoned that, before rendering the clause inoperative, there must be compelling equitable and policy considerations to prevent forfeiture, and only because its application would be inconsistent with the rehabilitative purpose of a reorganization proceeding.
It is also significant that the Federal bankruptcy cases arise under statutes which look to the protection of the debtor’s creditors and generally to the public interest (see Matter of Queens Blvd. Wine & Liq. Corp. v. Blum, 503 F. 2d 202, 206, supra). Under the supremacy clause (U. S. Constr., art. VI) and the Federal bankruptcy statutes (e.g., Bankruptcy Act, § 101 et seq. [Chapter 10, Corporate Beorganizations], U. S. Code, tit. 11, § 501 et seq.; Bankruptcy Act, § 77 [Bailroad Beorganization], U. S. Code, tit. 11, § 205; Bankruptcy Act, § 301 et seq. [Chapter 11, Arrangements], U. S. Code, tit. 11, § 701 et seq.), the Federal bankruptcy courts undoubtedly have a power broader than that of a court resolving a private dispute between landlord and tenant (see 1 Bemington, Bankruptcy [5th ed.],§ll).
Nonetheless, the power of a court to relieve a tenant of forfeiture of its lease under a bankruptcy termination clause does not require the breadth of Federal judicial power exercised under the bankruptcy laws. At the same time the bankruptcy clause is valid and enforceable. It may not lightly be cast aside in the absence of fraud, collusion, or evident overreaching by a landlord who seeks unreasonably to invoke a forfeiture for only a literal and technical breach. Before a forfeiture may result the bankruptcy petition must have had some apparent substance and validity. The forfeiture need not, however, be contingent *617 on an adjudication on the merits sustaining the petition. Hence, the dismissal of the petition in.this case was of little or no effect; there was evident substantial foundation in the insolvent condition of the tenant which persisted even after the. dismissal and was accompanied by circumstances which apparently continued to impair and imperil the security of the landlords.
Accordingly, the order of the Appellate Division should be affirmed, with costs.
Judges Jasen, Gabrielli, Jones, Waohtler, Babin and Stevens concur.
Order affirmed.