Simons, J.
(dissenting). I would reverse and grant plaintiff summary judgment evicting defendants for reasons stated in the dissent of Justice Sullivan at the Appellate Division (92 AD2d 76, 81).
As did he, I find that the conduct of the tenant, Printsiples Fabric Corporation, came well within the language of paragraph 16 (a) of the lease entitling plaintiff to relief. Although hopelessly insolvent, Printsiples remained in business by delaying payment of its debts and eventually satisfying them by the payment of 161/2% of the sums due. Either act, delaying payment or the composition of creditors, was an arrangement sufficient to bring paragraph 16 (a) into play.
That Printsiples operated through Norcnote, who on the one hand took Printsiples stock thereby becoming in effect the debtor and on the other took assignments of the creditor’s claims against Printsiples thereby becoming the creditor, added nothing to the transaction as far as the landlord was concerned. It was left with a tenant who had neither credit nor control of its assets. Nor does the fact that the subtenant remained answerable for the debt add anything to the case. The landlord leased the property to the tenant based upon the tenant’s credit and with the understanding it could cancel the lease if the tenant became insolvent. Presumably, it consented to the sublease, not because it relied on the subtenant’s credit, but quite the opposite, because it still had the security of the original tenant and the remedy of paragraph 16 (a) if Printsiples suffered financial distress.
Printsiples’ present financial condition is precisely the risk paragraph 16 (a) was designed to protect against and the language the parties used for the purpose is clear and unambiguous. The first portion of that paragraph condemns as conduct sufficient to trigger termination of the lease the filing by or against the tenant pursuant to a Federal or State statute, a petition in bankruptcy or insolvency or for the reorganization or for the appointment of a *736 receiver or trustee. The words condemn formal insolvency proceedings. The second clause of the paragraph refers to less formal actions relating to an obviously insolvent tenant, an assignment for the benefit of creditors or a petition for or the mere entering into an arrangement.
The meaning of the words can be found in a law dictionary but any question of what the parties meant by an arrangement can best be found by the parties’ own perception of what it meant. Thus, the tenant as a party to the Norcnote/Printsiples/creditors transactions understood the word arrangement in precisely the sense urged by plaintiff here. In the agreement between Norcnote and its creditors which was “approved by [Printsiples by] separate rider”, the tenant equated the word “arrangement” to a settlement among the creditors affecting the debtor. The pertinent part of the agreement reads as follows: “It is understood that all other claims shall be subordinated to the claims of the Purchaser with respect to such inventory purchased with fund [szc] provided by the Purchaser (and its associates) and the proceeds of the sale thereof, in the event of any bankruptcy or state insolvency proceeding, or any assignment for the benefit of creditors or any other nonjudicial arrangement or settlement among creditors affecting the Debtor” (emphasis added).
The parties’ language tracked the language of paragraph 16 (a) precisely. First, the parties referred to a bankruptcy or State insolvency proceeding and thereafter they referred to an assignment for the benefit of creditors or any other nonjudicial arrangement or settlement. Since the only definition which the term arrangement could possibly have other than the one referred to in Black’s Law Dictionary was the bankruptcy arrangement contained in chapter 11 of the old Bankruptcy Act which was a judicial proceeding, the parties’ reference to a nonjudicial arrangement or settlement must, by any fair reading of the language of the paragraph and the intent of the parties, be deemed to encompass the very transaction which Printsiples entered into here.
The majority, disregarding this evidence of intent construe paragraph 16 (a) as if the quoted language was conjunctive, not disjunctive. But the tenant agreed that the *737 lease could be canceled if the tenant became bankrupt “or if Tenant make an assignment for the benefit of creditors or petition for or enter into an arrangement”. Manifestly, under this provision formal proceedings are not required to trigger the landlord’s rights; the broad language of the lease contemplates and encompasses precisely the type of scheme devised here and there is no justification to excise the words “enter into an arrangement” or to construe the phrase as a redundancy referring to formal proceedings.
The general rule is that “[ajbsent some element of fraud, exploitive overreaching or unconscionable conduct on the part of the landlord to exploit a technical breach, there is no warrant, either in law or equity, for a court to refuse enforcement of the agreement of the parties” (Fifty States Mgt. Corp. v Pioneer Auto Parks, 46 NY2d 573, 577). There being no proof of such conduct by the landlord here, it is not for the court to undo the language- of a solemn lease agreement and destabilize the rights of the parties (see W.F.M. Rest, v Austern, 35 NY2d 610). The tenant’s “arrangement” to stave off bankruptcy may have been different from that commonly used but it still was an arrangement necessitated by the insolvency of the tenant and plaintiff was entitled to evict it.
Chief Judge Cooke and Judges Jasen, Jones, Meyer and Kaye concur; Judge Simons dissents and votes to reverse in an opinion in which Judge Wachtler concurs.
Order affirmed, with costs, in a memorandum.