Gerald J. STOPPI, and Diane Stoppi,
Plaintiffs Below, Appellants,

v.

WILMINGTON TRUST COMPANY,
Defendant Below, Appellee.

LARRY'S HOMES, INC., Defendant
Below, Appellant,

v.

Gerald J. STOPPI and Diane Stoppi,
Plaintiffs Below, Appellees.

Supreme Court of Delaware.

Submitted: Oct. 21, 1986.
Decided: Nov. 21, 1986.

Douglas A. Shachtman, Wilmington, for
Gerald J. Stoppi and Diane Stoppi.

Michael J. Goodrick, of Theisen, Lank,
Mulford & Goldberg, P.A., Wilmington, for
Larry's Homes, Inc.

Matthew J. Lynch, Jr., of Wilmington
Trust Co., Wilmington, for Wilmington
Trust Co.

Before CHRISTIE, C.J., MOORE and WALSH, JJ.

MOORE, Justice.

In this action under the Uniform Commercial Code, 6 *Del.C.* § 1–101 *et. seq.*, we address for the first time the duty of a secured party to give written notice under 6 *Del.C.* § 9–504(3)[1] prior to a sale or disposition of repossessed collateral, irrespective of any actual notice received by a debtor from another source.

Plaintiffs (the Stoppis) sued in the Superior Court to recover statutory damages under 6 *Del.C.* § 9–507(1)[2] from Larry's Homes, Inc. ("LHI" or "seller") and the Wilmington Trust Company alleging that defendants failed to give plaintiffs the statutory notice required by 6 *Del.C.* § 9–504(3) in connection with a private sale of the latters' repossessed mobile home.

The Stoppis appeal the Superior Court's ruling on summary judgment that the reassignment by Wilmington Trust of the collateral and security agreements to LHI did not require notice to the plaintiffs, since that transfer was not a "sale or other intended disposition" under Section 9–504(3). LHI appeals the Superior Court's grant of summary judgment to plaintiffs holding LHI liable, as the secured creditor at the time the collateral was sold, for statutory damages arising from LHI's failure to give plaintiffs the required Section 9–504(3) notice. Specifically, LHI attacks the Superior Court's determinations that (1) LHI may not rely on notice given by a third party of an intended sale or other disposition of collateral to satisfy the former's duties as a secured creditor under Section 9–504(3); and, (2) that written notice of an intended sale or disposition of repossessed collateral by a secured party is required under Section 9–504(3). We find no error below. Thus, we conclude that under these circumstances only written notice by the seller of collateral will suffice to discharge its duties under 6 *Del.C.* § 9–504(3). Accordingly, we affirm.

## I.

The material facts are not in dispute. In August, 1981, the Stoppis executed a conditional sales contract with LHI for the installment purchase of a mobile home. LHI assigned the contract and security agreement to Wilmington Trust under a standing agreement between the two parties, which by its terms obligated LHI to repurchase the contract in the event of a default. In 1982, the Stoppis had difficulty making the required installment payments to Wilmington Trust. The Stoppis then agreed to allow LHI to remove the property to the LHI lot in an attempt to sell the mobile home on the Stoppis' behalf. Despite this effort, the Stoppis defaulted on their obligation to Wilmington Trust.

---

1. This Section provides, in pertinent part:
   (3) Disposition of the collateral may be by public or private proceedings and may be made by way of 1 or more contracts ... Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, *reasonable notification* of the time and place of any public sale or *reasonable notification* of the time after which any *private sale or other intended disposition* is to be made shall be sent by the secured party to the debtor, if he has not signed after default a statement renouncing or modifying his right to notification of sale. In the case of consumer goods no other notification need be sent ...
   * * *
   6 *Del.C.* § 9–504(3) (emphasis added).

2. This section provides, in pertinent part:
   (1) If it is established that the secured party is not proceeding in accordance with the provisions of this Part disposition may be ordered or restrained on appropriate terms and conditions. If the disposition has occurred the debtor or any person entitled to notification or whose security interest has been made known to the secured party prior to the disposition has a right to recover from the secured party any loss caused by a failure to comply with the provisions of this Part. If the collateral is consumer goods, the debtor has a right to recover in any event an amount not less than the credit service charge plus 10 percent of the principal amount of the debt or the time price differential plus 10 percent of the cash price.
   6 *Del.C.* § 9–507(1).

On January 26, 1983, Wilmington Trust lawfully repossessed the property, and on January 28, 1983, the bank sent written notice to the Stoppis advising them that (1) they were in default of the security agreement; (2) the mobile home had been repossessed; and (3) the property would be sold after February 17, 1983 at private sale.[3] Up to this point Wilmington Trust was the secured party. However, no such sale by the bank occurred. Rather, on March 29, 1983 Wilmington Trust reassigned the installment purchase agreement and title to the collateral back to LHI pursuant to the standing repurchase agreement. LHI later sold the property at a private sale without further notice to plaintiffs.

The Stoppis sued LHI and Wilmington Trust under Section 9–507(1) of the Uniform Commercial Code seeking recovery of statutory damages for failure to give "reasonable notification" prior to the sale or other disposition of repossessed collateral. 6 *Del.C.* § 9–504(3). As to the bank's reassignment back to LHI, the Superior Court ruled that Wilmington Trust had no duty to give the Stoppis notice under Section 9–504(3). However, upon becoming the secured party LHI was held to such a duty, and could not discharge it by reliance on the bank's prior acts.

## II.

■ Part Five of Article 9 of the Uniform Commercial Code delineates the rights and remedies of the secured party and the debtor. Part Five gives the secured party the right to take possession of the collateral upon the debtor's default and dispose of it in satisfaction of the claim. However, the creditor must comply with the requirements of Section 9–504, and a deviation from this provision affords the debtor a remedy for statutory damages under Section 9–507(1).[4]

## A.

■ Section 9–504(3) requires that a *secured party* give a debtor reasonable notification of the time after which any "private sale or other intended disposition" of repossessed collateral is to be made. The Stoppis argue that Wilmington Trust is liable for statutory damages because it sent them a misleading notice on January 28, 1983 concerning the bank's disposition of the repossessed collateral. That notice read:

Dear Customers,

We have repossessed the 1972 Madison Mobile Home, Serial No. 3051, which serves as collateral for the above-captioned Security Agreement which is in default.

Please be advised that we will sell the unit after February 17, 1983.

The Stoppis contend that Wilmington Trust has violated Section 9–504(3) since it misrepresented the identity of the true seller of the repossessed collateral, as LHI actually sold the mobile home. We consider this argument irrelevant.

In order to establish Wilmington Trust's liability for damages under Section 9–507(1), the Stoppis must prove a violation of one of the provisions contained at 6 *Del.C.* §§ 9–501 through 9–506. While the bank gave an erroneous notice, it in fact had no duty under Section 9–504(3) to give any notice. Under the circumstances it cannot be liable for Section 9–507(1) statutory damages.

The reasonable notification requirement of Section 9–504(3) is triggered only in connection with a sale or other disposition of the repossessed collateral. This brings Section 9–504(5) of the Code into play— where a reassignment, as here, occurs. That law provides:

---

**3.** The Stoppis argue, on appeal, that this notice did not satisfy the requirements imposed by Section 9–504(3). We need not address this issue in light of our holding that Wilmington Trust had no duty to send any notice and that LHI could not rely on Wilmington Trust's written notice. Since the proper secured party did not send written notice, the contents of Wilmington Trust's notice are irrelevant here.

**4.** J. White and R. Summers, *Uniform Commercial Code* § 26–1 (2d ed.1972).

(5) A person who is liable to a secured party under a guaranty, indorsement, *repurchase agreement* or the like and who receives a transfer of collateral from the secured party or is subrogated to his rights has thereafter the rights and duties of the secured party. *Such a transfer of collateral is not a sale or disposition of the collateral under this Article.*

6 *Del.C.* § 9–504(5) (emphasis added).

■ The last sentence in Section 9–504(5) makes clear that a reassignment of collateral from the bank back to the seller, pursuant to the repurchase agreement, is not a sale or disposition of the collateral under the Code. Thus, the transfer from Wilmington Trust back to LHI does not activate the notice provisions of Section 9–504(3). *See Community Management Association of Colorado Springs, Inc. v. Tousley,* 32 Colo.App. 33, 505 P.2d 1314, 1317 (1973); *Reeves v. Associates Financial Services Co., Inc.,* 197 Neb. 107, 247 N.W.2d 434, 439 (1976); *Jefferson Credit Corp. v. Marcano,* N.Y.Civ.Ct., 60 Misc.2d 138, 302 N.Y.S.2d 390, 396 (1969); *Allard v. Ford Motor Credit Co.,* 139 Vt. 162, 422 A.2d 940, 942–43 (1980).

The bank's liability under Section 9–507(1) for statutory damages must be predicated upon a violation of Sections 9–501 through 9–506. Clearly, when Wilmington Trust had no duty to act under any of these provisions, including Section 9–504(3), no Section 9–507(1) liability attaches by reason of its legally meaningless notice of sale.

■ The Stoppis also argue that the bank breached a fiduciary duty owed them by sending a misleading notice of private sale. This theory of liability is insupportable for two reasons. First, the Stoppis' cause of action for damages is based on Section 9–507(1). By its terms, this section imposes damages only upon secured parties who violate Sections 9–501 through 9–506. The Stoppis have not established such a violation. Second, the Stoppis have an appropriate remedy against LHI, who owed

them the legal duty to give a Section 9–504(3) notice of private sale.

### B.

■ Thus, we turn to the Stoppis' recovery of statutory damages under Section 9–507(1). LHI challenges the Superior Court's rulings that (1) LHI could not rely on the written notice sent to the Stoppis by Wilmington Trust; and, (2) actual written notification of a sale or other disposition must be sent to the debtor by the secured party under Section 9–504(3).

LHI argues that it should be permitted to rely on the letter sent to the Stoppis by Wilmington Trust on January 28, 1983, since this satisfied the Stoppis' statutory right to reasonable notification. LHI contends that, by virtue of the repurchase agreement and Section 9–504(5), it has the *rights* and responsibilities of the bank as the previous secured party. Thus, the bank's earlier actions should inure to LHI's benefit. However, we cannot accept that view.

The Superior Court, in rejecting LHI's argument, reasoned:

> ... LHI contends that it stepped into the shoes of Wilmington Trust and, therefore, should be entitled to rely on the notice provided by Wilmington Trust. The Court disagrees.
>
> Section 9–504(3) requires that the secured party shall send notice. Wilmington Trust was the secured party when it sent that January 28 letter but ceased to be after LHI repurchased the installment contract. At that point, all obligations to Wilmington Trust had been discharged. LHI became the secured party and, as a secured party who conducted the private sale, it was LHI who was required by the statute to provide notice of that intention.

*Stoppi v. Larry's Homes, Inc.,* Del.Super., C.A. No. 84C–JN–74, slip op. at 4–5 (March 19, 1986) [Available on WESTLAW, DE–CS database].

We agree with that analysis. LHI conducted the first effective sale or disposition of the collateral and thus should bear the

responsibility of sending the debtors the Section 9–504(3) notification. *See Jefferson Credit Corp. v. Marcano*, N.Y.Civ.Ct., 60 Misc.2d 138, 302 N.Y.S.2d 390, 396 (1969).

LHI next asserts that since the Stoppis had actual notice of the impending private sale, the reasonable notice requirement of Section 9–504(3) had been satisfied.[5] LHI contends the Superior Court erred in holding that written notice must be sent to the debtor, and that oral notice is insufficient. The Superior Court explained its reasoning:

> Section 9–504(3), in these circumstances, commands the secured party to "send" notice. Section 1–201(38) of Title 6 provides in pertinent part:
>
>> " 'Send' in connection with any writing or notice means to deposit in the mail or deliver for transmission by any other usual means of communication with postage or cost of transmission properly provided for and properly addressed . . ."
>
> In addition, although "reasonable notification" is not defined by the Uniform Commercial Code, the draftsmen state that, "at a minimum it must be *sent* in such time that the persons entitled to receive it will have sufficient time to take appropriate steps to protect their interest by taking part in the sale or other disposition if they desire." . . .

*Stoppi*, slip op. at 5.

Again, we find the reasoning of the Superior Court sound and read Section 9–504(3) as requiring a secured party to send written notification to the debtor prior to any sale or other disposition on the collateral. We recognize that other jurisdictions have split on the issue. However, we believe that written notice, sent in accordance with Section 1–201(38), is the better rule since such an interpretation gives greater protection to the debtor, eliminates the problems of proof associated with oral notice, and establishes exactly what notice has been given in a particular instance.

*Executive Financial Services, Inc. v. Garrison*, 722 F.2d 417, 418–19 (8th Cir.1983).

Accordingly, the secured party has a duty under these circumstances to send the debtor written notification of the impending sale or disposition of the collateral. It is undisputed that LHI failed to do so, and liability for statutory damages under Section 9–507(1) thereby follows.

For the foregoing reasons, the judgment of the Superior Court is AFFIRMED.

---

**5.** The Superior Court found, and the parties do not dispute, that the Stoppis had received oral notice of the private sale.