**BROOKS v. WACHOVIA BANK & TRUST CO.**

[96 N.C. App. 89 (1989)]

MARY E. BROOKS, Plaintiff Appellant v. WACHOVIA BANK & TRUST CO.
AND GATE CITY MOTORS, INC., Defendant Appellees

No. 8818SC1407

(Filed 17 October 1989)

**Uniform Commercial Code § 46 (NCI3d) — car repossessed by lender — transfer to dealer — car not sold within 90 days — lender not liable**

A lender who repossesses a car and transfers it to a dealer under a repurchase agreement is not liable for the dealer's failure to sell the car within ninety days of repossession as required by N.C.G.S. § 25-9-505(1).

**Am Jur 2d, Secured Transactions §§ 211, 212.**

APPEAL by plaintiff from Judgment of *Judge Russell G. Walker, Jr.*, entered 19 September 1988 in GUILFORD County Superior Court. Heard in the Court of Appeals 24 August 1989.

*Central Carolina Legal Services, by Stanley B. Sprague and Sorien K. Schmidt, for plaintiff appellant.*

*Brooks, Pierce, McLendon, Humphrey & Leonard, by Jill R. Wilson, for defendant appellee.*

COZORT, Judge.

This case presents a question of first impression in North Carolina: whether a lender who repossesses a car and transfers it to a dealer under a repurchase agreement is liable for the dealer's failure to sell the car within ninety days of repossession as required by N.C. Gen. Stat. § 25-9-505(1). We hold that the lender is not liable.

On 19 November 1987 plaintiff Mary Brooks brought this action against defendants Wachovia and Gate City Motors alleging, among other things, that both were responsible for failing to sell her car within ninety days after it had been repossessed, "thereby causing plaintiff the loss of use of her money" and subjecting the defendants to the penalties provided in N.C. Gen. Stat. § 25-9-507. Wachovia's answer denied responsibility for the sale and cross claimed, in the event of an adverse judgment, for complete indemnity from Gate City. On 18 August 1988 Wachovia moved for summary judgment on all claims against it. On 19 September 1988

the trial court granted partial summary judgment, dismissing the plaintiff's "claim pursuant to N.C. Gen. Stat. § 25-9-505 as it pertains to Wachovia." When the case went to trial, the plaintiff settled with and voluntarily dismissed her claims against defendant Gate City. The presiding judge directed a verdict in favor of defendant Wachovia on the remaining claims against it. On 7 October 1988 the plaintiff gave notice of appeal from the order of summary judgment. Only the issue raised by that judgment is before the court.

Plaintiff's dispute with defendant derived from her purchase of a 1983 Mercury Cougar. On 25 February 1983 plaintiff (the debtor) signed a Note and Purchase Money Security Agreement with Gate City (the dealer) for the balance of the sale price. In accordance with its common practice, the dealer assigned this chattel paper to Wachovia (the lender) and entered into a reassignment (repurchase) agreement whereby, in the event of default by the debtor and repossession by the lender, the dealer would repurchase the car from the lender and receive a reassignment of the chattel paper.

The dealer, as agent for Globe Life Insurance Co. (Globe), also sold plaintiff credit life and credit disability insurance. In April 1985 Ms. Brooks became ill, and, except for the months of September and October 1985, she remained ill and disabled during 1985 and 1986. Because of Ms. Brooks' disability, Globe, pursuant to its insurance contract, made payments on her behalf to Wachovia. These payments were routinely late. When the account was delinquent in May and July 1985, Wachovia took possession of the car, but each time it was redeemed.

In October 1986 Wachovia notified Ms. Brooks that she was again in default and that the car would be repossessed unless payment was made. On 20 October 1986 the car was tendered to Wachovia. On 23 October 1986 Wachovia informed Ms. Brooks by certified mail that the car had been repossessed and, unless redeemed, would be sold after 3 November 1986. At the time of repossession, payments made by the plaintiff and by Globe on her behalf totaled sixty percent or more of the car's cash price. Between 4 November and 6 November 1986 Gate City repurchased the car, and Wachovia reassigned the chattel paper and transferred the car's title to Gate City. On 24 March 1987 Gate City sold the car for approximately $5,000.00.

**BROOKS v. WACHOVIA BANK & TRUST CO.**

[96 N.C. App. 89 (1989)]

This transaction, involving a debtor, a secured party, and a person liable to the secured party under a repurchase agreement, is governed by Article Nine of the Uniform Commercial Code (U.C.C.). The applicable provisions are set forth in N.C. Gen. Stat. §§ 25-9-505(1) and 25-9-504(5):

> § 25-9-505. Compulsory disposition of collateral; acceptance of the collateral as discharge of obligation.
>
> (1) If the debtor has paid sixty percent (60%) of the cash price in the case of a purchase money security interest in consumer goods or sixty percent (60%) of the loan in the case of another security interest in consumer goods, and has not signed after default a statement renouncing or modifying his rights under this part a secured party who has taken possession of collateral must dispose of it under G.S. 25-9-504, and if he fails to do so within 90 days after he takes possession, the debtor at his option may recover in conversion or under G.S. 25-9-507(1) on secured party's liability.
>
> § 25-9-504. Secured party's right to dispose of collateral after default; effect of disposition.
>
> * * * *
>
> (5) A person who is liable to a secured party under a guaranty, endorsement, repurchase agreement or the like and who receives a transfer of collateral from the secured party or is subrogated to his rights has thereafter the rights and duties of the secured party. Such a transfer of collateral is not a sale or disposition of the collateral under this article.

Plaintiff's argument on appeal is that imposing liability on defendant would further the "purpose of G.S. Section 25-9-505(1), which is to require a quick sale of repossessed collateral, thereby preventing the collateral from deteriorating in value." When the dealer is contractually obligated to the lender under a repurchase agreement, plaintiff contends that the "lender's knowledge that it would be liable for the minimum statutory damages of G.S. Section 25-9-507 would encourage it to quickly turn over the collateral to the dealer, thereby reducing the chances that the collateral would deteriorate in value." Plaintiff asserts that lenders rather than dealers usually repossess vehicles and that, because the ninety-day deadline required by U.C.C. Section 9-505(1) runs from the date of repossession, "repossessing lenders *always* contribute to the

time that elapses between repossession and sale." (Emphasis in plaintiff's brief.) Thus, plaintiff argues that lenders, situated as was the defendant in this case, should be deemed to share control with dealers in meeting the ninety-day deadline. Plaintiff cites no authority to support this proposition, and we are not persuaded that it should be adopted here.

When the lender repossesses collateral, reassigns the debtor's chattel paper, and transfers the collateral to the dealer, courts have held that the lender has surrendered control over the collateral's disposition and is not liable for the dealer's failure to fulfill the duties specified in U.C.C. Section 9-504(3). In *Joyce v. Cloverbrook Homes, Inc.*, 81 N.C. App. 270, 273, 344 S.E.2d 58, 60 (1986), this Court held that only the dealer, after acquiring collateral pursuant to a repurchase agreement with the lender, is liable for failure to comply with the notice requirement concerning foreclosure sales contained in U.C.C. § 9-504(3). In *Stoppi v. Wilmington Trust Co.*, 518 A.2d 82 (1986), the plaintiff debtor (Gerald Stoppi) sued the lender (Wilmington Trust) and the dealer (LHI) for failure to give the notice required by U.C.C. § 9-504(3). The lender repossessed the debtor's mobile home and sent written notice on 28 January 1983 that the collateral would be sold after 17 February 1983. On 29 March 1983 the lender reassigned the chattel paper and title to the mobile home to the dealer pursuant to a standing repurchase agreement. The Supreme Court of Delaware reasoned that

> [t]he last sentence in Section 9-504(5) makes clear that a reassignment of collateral from the bank back to the seller, pursuant to the repurchase agreement, is not a sale or disposition of the collateral under the Code. Thus, the transfer from Wilmington Trust back to LHI does not activate the notice provisions of Section 9-504(3).

> \* \* \* \*

> Wilmington Trust was the secured party when it sent that January 28 letter but ceased to be after LHI repurchased the installment contract. At that point . . . Wilmington Trust had been discharged. LHI became the secured party and as a secured party who conducted the private sale, it was LHI who was required by the statute to provide notice of that intention.

*Stoppi v. Wilmington Trust Co.*, 518 A.2d 82, 85 (1986) (citations omitted) (quoting *Stoppi v. Larry's Homes, Inc.*, Del.Super., C.A. No. 84C-JN-74, slip op. at 4-5 (19 March 1986) (WESTLAW, DE-CS database); *accord Allard v. Ford Motor Credit Co.*, 422 A.2d 940, 942-43 (1980); *Community Management Association v. Tousley*, 505 P.2d 1314, 1317 (1973); *see also* J. White & R. Summers, Uniform Commercial Code §§ 25-9, 25-12 (3d ed. 1988).

By analogy to the lender's liability under U.C.C. Section 9-504(3), we conclude that where the lender gives due notification of repossession of a motor vehicle and transfers the vehicle, its title, and the chattel paper secured by the vehicle to the dealer, pursuant to a repurchase agreement, the lender has no shared control over disposition of the vehicle and is not liable for the dealer's failure to comply with the requirements of U.C.C. Section 9-505(1). Accordingly, on the facts before us, we hold that defendant Wachovia is not liable for the failure of Gate City to sell plaintiff's car within ninety days of its repossession as required by N.C. Gen. Stat. § 25-9-505(1).

The trial court's order of 19 September 1988 entering partial summary judgment for defendant is

Affirmed.

Judges ARNOLD and BECTON concur.