MELVIN REEVES, APPELLANT, v. ASSOCIATES FINANCIAL SERVICES COMPANY, INC., A CORPORATION, APPELLEE.

247 N. W. 2d 434

Filed November 24, 1976. No. 40570.

George A. Sommer, for appellant.

George P. Burke of Van Steenberg, Myers & Burke, and Lawrence W. Rice, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, NEWTON, CLINTON, and BRODKEY, JJ.

BRODKEY, J.

Plaintiff, Melvin Reeves, appellant herein, commenced this action in the county court of Scotts Bluff County against defendant, Associates Financial Services Company, Inc., appellee herein, for an accounting of an alleged surplus arising out of the repossession sale of a motor vehicle which the appellant had purchased under an installment contract, and in which the appellee held a security interest as assignee of that contract. Upon cross-motions for summary judgment, the county court entered summary judgment in favor of the appellant. On appeal, the District Court for Scotts Bluff County reversed and vacated the judgment of the county court, granted the appellee's motion for summary judgment, and dismissed the appellant's petition. Reeves has appealed, contending that the District Court erred

in granting summary judgment to the appellee and dismissing his petition. We reverse and remand.

The facts relevant to this appeal are as follows. On August 31, 1972, Reeves purchased a truck tractor from Floyd's Sales and Service, Inc. ("Floyd's"), for $36,664.04 under a retail installment contract. At that time, Floyd's apparently had a financing arrangement with the appellee, hereinafter referred to as "Associates," whereby Floyd's would assign its installment contracts to Associates.

The printed form contract, furnished by Associates and used by Floyd's in the sale to Reeves, provided that the contract could be assigned, specifically naming Associates as assignee, and provided for three alternate forms of assignment: (1) Assignment without recourse; (2) assignment with recourse; and (3) assignment with either a full or limited repurchase agreement. On August 31, 1972, Floyd's assigned the Reeves contract to Associates, making use of the "assignment without recourse" provision. A notation in handwriting next to the printed words of assignment, however, indicated that the assignment, was "Subject to The White Dealer Agreement." The White Dealer Agreement itself is not included in the record, and its specific terms are unknown, although Associates contends in its brief that Floyd's was the guarantor of Reeves' contractual obligation under the dealer agreement.

After making 19 payments, Reeves defaulted on the contract in July 1974, with a balance due of $15,820.16. Reeves turned the truck over to Associates on July 29, 1974, and Associates notified Floyd's of the repossession by letter on July 30, 1974. This letter indicated that the truck was financed under the terms of the "White-Associates financing program," although the terms of that program are not in the record.

After repossession, the truck was stored at Floyd's. A repossession report prepared by Associates on July

30, 1974, indicated that the transactions between Floyd's and Associates were subject to the "White Factory Plan," and that Floyd's was to pay in full for the truck when it was sold. Floyd's signed a receipt of this repossession report, acknowledging that it had taken possession of the truck "merely as a bailee" for Associates, that it would store the truck without cost to Associates and would return the truck upon demand, and that it authorized Associates to secure replacement insurance at the expense of Floyd's.

On July 30, 1974, Associates notified Reeves that the truck would be offered for private sale beginning August 12, 1974. Associates also notified Floyd's of the date set for the foreclosure sale. On September 3, 1974, Floyd's sold the truck to Donald and Velma Rising for $18,220.16 under an installment contract, and on the same day assigned the Rising contract to Associates. This assignment, as was the case with the Reeves contract, was under the "assignment without recourse" alternative on the form contract, but subject to the "White Dealer Agreement." The evidence does not show how much Associates paid Floyd's for the assignment of the Rising contract; nor whether the assignment of the Rising contract was related to the reassignment of the Reeves contract. On September 4, 1974, Floyd's issued a $15,820.16 check to Associates, and Associates reassigned the Reeves contract to Floyd's without recourse.

Reeves initiated this action in county court, alleging in his amended petition that Associates had repossessed the truck with a balance due of $15,820.16, and had sold it for $18,220.16. Reeves demanded an accounting for the resulting $2,400 surplus under section 9-504(2), U. C. C. In its answer, Associates denied selling the truck for $18,220.16, and stated that it sold the truck to Floyd's for $15,820.16. Associates thus denied receiving any surplus whatsoever, alleging that it received the

exact amount due on the Reeves contract from Floyd's in consideration for its reassignment of that contract to Floyd's.

In support of its position, Associates presented a check, dated September 4, 1974, for $15,820.16 from Floyd's; an affidavit of its vice-president, who stated that $15,820.16 was the complete amount Associates received from Floyd's for the sale of the truck; and an affidavit of Floyd's president, stating that Floyd's had paid Associates $15,820.16 for the truck. Reeves presented the Rising contract, which showed that Floyd's had sold the truck to the Risings for $18,220.16 on September 3, 1974. Reeves also contended that Floyd's was an agent of Associates when Floyd's resold the truck to the Risings, and that Associates was therefore liable for the surplus arising out of that sale.

On August 28, 1975, the county court granted summary judgment to Reeves, awarding him $2,400 and costs. The findings of the county court relevant to this appeal were: (1) There was no genuine issue of material facts to be resolved; (2) that Associates did not comply with section 9-504(3), U. C. C., in disposing of the collateral to Floyd's; (3) that the sale of the collateral to Floyd's was not commercially reasonable; and (4) that Reeves was entitled to an accounting of the surplus arising out of the resale of the collateral to the Risings.

On November 17, 1975, the District Court reversed and vacated the judgment of the county court, denied the motion of Reeves for summary judgment, and granted Associates' motion for summary judgment, dismissing the plaintiff's petition with prejudice. The District Court made no findings and did not explain its grounds for dismissing the petition.

The central issue in this appeal is whether summary judgment was properly granted to Associates on the facts presented. The rules as to summary judgments

are well-established in this jurisdiction. "The moving party is not entitled to summary judgment except where there exists no genuine issue as to any material fact in the case and where under the facts he is entitled to judgment as a matter of law." Green v. Village of Terrytown, 189 Neb. 615, 204 N. W. 2d 152 (1973). The issue on a motion for summary judgment is whether or not there is a genuine issue as to any material fact, and not how that issue should be determined. In considering such a motion, the trial court must take that view of the evidence most favorable to the party against whom summary judgment is directed, giving to that party the benefit of all favorable inferences that may reasonably be drawn from the evidence. Valentine Production Credit Assn. v. Spencer Foods, Inc., 196 Neb. 119, 241 N. W. 2d 541 (1976); Farmland Service Coop., Inc. v. Klein, 196 Neb. 538, 244 N. W. 2d 86 (1976). This court has stated that summary judgment is not appropriate even where there are no conflicting evidentiary facts if the ultimate inferences to be drawn from those facts are not clear. Barnes v. Milligan, 196 Neb. 50, 241 N. W. 2d 508 (1976). Thus, "Summary judgment is an extreme remedy and should be awarded only when the issue is clear beyond all doubt." Barnes v. Milligan, *supra*, at p. 53. This appeal must be decided within the framework of these principles. For the reasons given below, we find that genuine issues of material fact exist, and therefore remand the cause for further proceedings.

Reeves contends that Associates, as a secured party, is liable for the surplus arising from the resale of the truck to the Risings under section 9-504(2), U. C. C. That section provides that where a secured party repossesses and sells collateral, "the secured party must account to the debtor for any surplus, and, unless otherwise agreed, the debtor is liable for any deficiency." There is no dispute in this case that Associates did be-

come the secured party in the Reeves contract on August 31, 1972, when Floyd's assigned to it that contract. See § 9-105(1), U. C. C. Although Reeves acknowledges that Floyd's, and not Associates, sold the truck to the Risings, he contends that Floyd's was acting as Associates' agent when it made the sale.

Associates contends that it is not liable for the surplus in question for two reasons. First, Associates argues that it received no surplus at all because it received only $15,820.16, the exact balance due on the Reeves contract, from Floyd's as consideration for the reassignment of the Reeves contract to Floyd's on September 4, 1974. In its pleadings, Associates characterizes the reassignment as a sale of the truck to Floyd's. Secondly, Associates argues that the reassignment of the Reeves contract to Floyd's on September 4, 1974, was not a sale or disposition of collateral under section 9-504(5), U. C. C., but rather was a transfer of collateral to Floyd's, which succeeded to the rights and duties of the secured party. The import of this latter argument is that Reeves has sued the wrong party, and that Floyd's is the party who is liable for the surplus in question.

It is clear that under section 9-504(2), U. C. C., Reeves, as debtor, is entitled to any surplus arising from a repossession sale of the collateral by the secured party. What is less clear is whether Associates conducted a repossession sale which resulted in a surplus, and whether Associates is liable to Reeves for the surplus that arose when the truck was sold to the Risings. A determination as to whether Associates is liable to Reeves turns on the questions of whether Floyd's acted as Associates' agent in selling the truck to the Risings; and whether the reassignment of the Reeves contract to Floyd's was a sale or disposition of collateral under section 9-504(5), U. C. C.

If Floyd's acted as Associates' agent in selling the

truck to the Risings, Associates, as a principal, would be liable to Reeves for the surplus in question under section 9-504(2), U. C. C. "(1) Agency is the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act." Restatement, Agency 2d § 1, p. 7. See, also, Anderson v. Valley Feed Yards, Inc., 175 Neb. 719, 123 N. W. 2d 839 (1963). Thus the distinguishing features of an agency relationship are consent and control. Donahoo v. Home of the Good Shepherd of Omaha, Inc., 193 Neb. 586, 228 N. W. 2d 287 (1975). Restatement, Agency 2d, § 14 J, p. 73, provides: "One who receives goods from another for resale to a third person is not thereby the other's agent in the transaction: whether he is an agent for this purpose or is himself a buyer depends upon whether the parties agree that his duty is to act primarily for the benefit of the one delivering the goods to him or is to act primarily for his own benefit."

Although the facts presented in the record do not warrant a finding that Floyd's was Associates' agent under these principles, neither do they clearly show what the relationship between Floyd's and Associates was. It was Associates, not Floyd's, that notified Reeves of the repossession sale. Floyd's acknowledged receiving possession of the truck after repossession as bailee and agreed to return it upon demand. Floyd's paid Associates the exact amount due on the Reeves contract, yet also assigned the Rising contract to Associates. The transactions between Floyd's and Associates were subject to a dealer agreement, the terms of which are not in the record. Floyd's, at the time it held the truck as bailee, authorized Associates to secure replacement insurance at the expense of Floyd's. Conflicting inferences can be drawn from these facts, and material issues of fact exist as to what the relationship between

Floyd's and Associates was, and as to whether an agency relationship was in effect. Therefore, the District Court judgment may not be sustained on the ground that Associates was not responsible, as a principal, for the surplus arising out of the Rising sale, for the material issues of fact are not clear beyond doubt, and summary judgment on this ground is improper. We turn to the question of whether section 9-504(5), U. C. C., is applicable in this case.

Section 9-504(5), U. C. C., qualifies the characterization of certain transfers of repossessed collateral, providing: "A person who is liable to a secured party under a guaranty, indorsement, repurchase agreement or the like and who receives a transfer of collateral from the secured party or is subrogated to his rights has thereafter the rights and duties of the secured party. Such a transfer of collateral is not a sale or disposition of the collateral under this article." This subsection clarifies who has the rights and duties of a secured party when a seller and a finance company have a guaranty or repurchase agreement on a contract which has been assigned to the finance company. Where a seller assigns an installment contract to a finance company subject to a repurchase agreement or guaranty, it is the seller who has the rights and duties of a secured party when the finance company repossesses collateral and transfers it to the seller pursuant to the repurchase agreement or guaranty. Such a transfer is not a sale or disposition of collateral. Jefferson Credit Corp. v. Marcano, 302 N. Y. S. 2d 390, 60 Misc. 2d 138 (1969); Rangel v. Bock Motor Co., 437 S. W. 2d 329 (Tex. Civ. App., 1969); Community Management Assn. of Colorado Springs, Inc. v. Tousley, 32 Colo. App. 33, 505 P. 2d 1314 (1973). If the seller, after such a transfer, then resells the collateral for less than the amount due on the debtor's contract it may recover the deficiency from the debtor. § 9-504(2), U. C. C.; Donovan

v. Wechsler, 11 Cal. App. 3d 210, 89 Cal. Rptr. 669 (1970). If the resale by the seller results in a surplus, the debtor is entitled to recover that surplus from the seller, not from the finance company. § 9-504(2), U. C. C.; Whiteman v. Degnan Chevrolet, Inc., 217 Pa. Super. 424, 272 A. 2d 244 (1970). The purpose of section 9-504(5), U. C. C., is to insure that the value of repossessed collateral is measured by a bona fide sale in the market place, and not by an artificial value, usually the balance due on the debtor's contract, set by a repurchase or guaranty agreement between a seller and a finance company.

Obviously the application of section 9-504(5), U. C. C., in this case depends on whether Floyd's and Associates in fact had a guaranty or repurchase agreement. No direct evidence was presented which dispositively resolves this factual issue. The form contract used in the sale to Reeves provided a space for assignment of the contract to Associates with a full repurchase agreement, but an alternate section entitled "Assignment Without Recourse" was used when the assignment was made. It was Associates which notified Reeves of the repossession sale. Floyd's took possession of the truck as bailee after Reeves defaulted. Associates' repossession report indicates that Floyd's was to pay for the truck in full upon resale. The assignment of the Reeves contract to Associates was subject to a dealer agreement, the terms of which are not in the record. Floyd's paid Associates the exact balance due on the Reeves contract, although it also assigned to Associates the Rising contract. These, and other facts previously mentioned, permit conflicting inferences to be drawn as to whether Associates and Floyd's did have a guaranty or repurchase agreement. It is apparent that a material issue of fact exists in regard to whether section 9-504(5), U. C. C., should be applied in this case, and therefore summary judgment cannot be sustained on section 9-504(5) grounds.

A final word must be added in light of the confusion that has resulted in this case due to the parties switching their legal theories at various stages of the proceedings. Reeves' petition alleged that Associates was liable to him for the surplus arising out of the Rising sale under section 9-504(2), U. C. C. On appeal, Reeves now, arguing in the alternative, raises the additional argument that the reassignment of his contract to Floyd's on September 4, 1974, was not a commercially reasonable sale under section 9-504(3), U. C. C., and that he is entitled to damages under section 9-507(1), U. C. C. Although Reeves did not raise this issue in his pleadings, the county court made a finding of fact that Associates' reassignment of the truck to Floyd's on September 4, 1974, was not commercially reasonable under section 9-504(3), U. C. C. Although the county court may have gone beyond the pleadings in making such a finding, the rule is that on appeal a case will be considered upon the theory on which it was tried in the trial court. Timmerman v. Hertz, 195 Neb. 237, 238 N. W. 2d 220 (1976); Ford v. Perkins, 190 Neb. 304, 207 N. W. 2d 694 (1973).

Although the county court finding indicates that one of the theories this case was tried on was commercial unreasonableness of the reassignment of the Reeves contract to Floyd's, we find it unnecessary to pass on this issue at this stage of the proceedings. Upon remand, if it is found that section 9-504(5), U. C. C., is applicable because Associates and Floyd's had a repurchase or guaranty agreement, the case against Associates may be disposed of on that ground, and Reeves will have to look to Floyd's for the surplus arising out of the Rising sale. A determination as to the commercial reasonableness of the reassignment of the Reeves contract to Floyd's need only be made if section 9-504(5) is found to be inapplicable, and only if it is further found that Floyd's was not the agent of Associates when it resold the truck, but rather that Floyd's was a bona

fide purchaser of the truck from Associates. If such is the case, Associates' line of defense would be that its assignment of the Reeves contract to Floyd's for $15,-820.16 was a commercially reasonable sale of repossessed collateral. Under section 9-504(3), U. C. C., a secured party has a duty to resell repossessed collateral in a commercially reasonable manner. Price, as a term of sale, is a relevant consideration in determining whether a sale is commercially reasonable. First Nat. Bank of Bellevue v. Rose, 188 Neb. 362, 196 N. W. 2d 507 (1972); Associates Finance Co. v. Teske, 190 Neb. 747, 212 N. W. 2d 572 (1973). If the sale was not commercially reasonable, Reeves might be entitled to damages under section 9-507(1), U. C. C.

Since the record in this case does not show beyond doubt whether Associates and Floyd's in fact had a guaranty or repurchase agreement, or whether Floyd's acted as Associates' agent in reselling the truck to the Risings, the case was not appropriate for summary judgment. We reverse the judgment and remand the cause to the District Court for further proceedings, not inconsistent with this opinion.

REVERSED AND REMANDED.