HANS A. KELLER, Plaintiff-Appellee, *v.* LA RISSA, INC., a Hawaii corporation; and LARISSA V. KELLER, Defendants-Appellants

NO. 6056

NOVEMBER 15, 1978

RICHARDSON, C.J., KOBAYASHI, OGATA, MENOR AND KIDWELL, JJ.

OPINION OF THE COURT BY KIDWELL, J.

This action was brought to recover the balance due on a promissory note made by defendants-appellants. Appellants asserted defenses of payment and agreement to forbear, and counterclaimed for the value of collateral security allegedly retained by plaintiff-appellee. The appeal is from a judgment for appellee in the amount found due on the note together with attorney's fees.

From undisputed testimony, it appeared that appellee and appellant Larissa Keller had been married, and while married organized appellant La Rissa, Inc. which opened a ladies' dress shop in Waikiki. Several years later, the parties were divorced and appellants purchased appellee's interest in the corporation, giving as partial payment the promissory note on which suit was brought, in the principal amount of $25,000. The note was secured by a pledge of shares of the stock of the corporation and by a security agreement. The balance due on the note was reduced to $14,630.55 in August, 1973. With respect to subsequent events, the testimony is in conflict.

Gold bullion was transferred from appellant Larissa Keller to appellee. According to appellee, the bullion was transferred in satisfaction of note payments. According to appellant, it represented only collateral. The trial court believed the appellee and found that the gold bullion reduced the balance due on the note to $11,622.72, which remained due and owing.

With respect to the asserted contract to forbear, the trial court also believed appellee, and found that there was no

agreement to forbear, that in any event there was no consideration for the alleged agreement, and finally that if such an agreement had been made the period of agreed forbearance had passed.

The principal issue at trial had to do with a stock of dresses removed by appellants from their shop and placed in appellee's home. The trial court found that appellee agreed to temporarily store a portion of appellants' dress stock while the store was relocated in July 1974. At the time, the note was in default with respect to several monthly installments. When return of the dresses was requested, appellee responded in what the trial court found was an "equivocal" manner. For the purposes of this opinion, we assume that appellee refused from about July 16 to September 3 to release the dresses unless the delinquent installments of the note were paid. The trial court found that on September 16 and thereafter appellee demanded that appellant Larissa Keller take back the dresses, and that following September 23 appellee unequivocally and unconditionally offered her the opportunity to repossess the dresses. It was also found that following the offer appellant could have used the dresses in the operation of the store but refused to do so in order to be able to characterize appellee's continued possession as a conversion of the goods. This finding is supported by appellant Larissa Keller's testimony that, in response to appellee's call asking where she would like him to have the merchandise delivered, she replied that it was too late and that he had already converted the assets. From the testimony, it is apparent that the dresses remained in appellee's possession at the time of trial.

Appellants challenge the findings of fact as unsupported by the evidence and as reflecting partiality by the trial court. We have examined the record and find ample support for all of the trial court's findings. The trial court announced at the conclusion of the trial that it found appellee's testimony believable and that it disbelieved the testimony of appellant Larissa Keller. It is apparent that conflicts between appellant's testimony at the trial and in her deposition, as well as the documentary evidence, cast doubt on her credibility. We have said repeatedly that it is the province of the trial judge to

4

pass upon issues dependent on the credibility of witnesses and the weight of the evidence, and that we will not pass upon such issues. *Lee v. Wong*, 57 Haw. 137, 143, 552 P.2d 635, 640 (1976); *Ed Klein, Inc. v. Hotel Kaimana, Inc.*, 51 Haw. 268, 457 P.2d 210 (1969). We accept the findings as binding upon us in this appeal.

Appellants raise a question of law, however, with respect to the asserted conversion by appellee of the dresses which appellants placed in his hands for temporary storage. Delivery of the note to appellee was concurrent with execution by the parties of a security agreement which granted to appellee a security interest in all property of appellant corporation which might thereafter be in appellee's possession, as security for the payment of all obligations then or thereafter owing by appellant corporation to him. The trial court found that appellee asserted a lien on the dresses during the period of his refusal to return them to appellants. As a secured party, the note being in default, appellee clearly had a right to take possession of the dresses as collateral. HRS § 490:9-503. Appellants argue, in effect, that exercise of this right resulted in a conversion of the dresses and liability on the part of appellee for their value. We do not agree.

This is not the special case dealt with in HRS § 490: 9-505(1), pursuant to which a secured party who has taken possession of collateral consisting of consumer goods must dispose of it within 90 days or face liability as a converter if the debtor has paid 60% of the loan. It is clear that this section is inapplicable and counsel for appellants so conceded in oral argument. There is no suggestion that appellee has proposed to retain the collateral in satisfaction of the obligation, and the provisions of HRS § 490:9-505(2) applicable in that circumstance need not be considered. There is, of course, the obligation of a secured party in possession to use reasonable care in the custody and preservation of the collateral, as provided in HRS § 490:9-207. But liability for breach of that obligation is measured by the loss caused by the breach, and such a breach does not by statute constitute a conversion. We are not faced with consideration of such liability in the present case, in the absence of evidence from which the trial court could have

found the amount of any depreciation in the value of the dresses while in appellee's possession.[1]

We have before us the circumstance of a secured party in possession, not subject to the obligations imposed by § 490:9-505, who seeks judgment upon the debt but foregoes recourse against the collateral.[2] Pursuant to HRS § 490: 9-501, the rights and remedies of a secured party are cumulative and a secured party in possession of collateral may reduce his claim to judgment. *Michigan National Bank v. Marston*, 29 Mich. App. 99, 185 N.W.2d 47 (Ct. App. 1970); *Peoples National Bank of Washington v. Peterson*, 7 Wash. App. 196, 498 P.2d 884 (Ct. App. 1972); *McCullough v. Mobiland, Inc.*, 139 Ga. App. 260, 228 S.E.2d 146 (Ct. App. 1976). Except in the special case covered by § 490:9-505(1), the Code does not spell out an obligation of a secured party in possession of collateral to apply the collateral to the reduction of the debt. It has been held that retention of collateral for an unreasonable time constitutes an election by the secured party to retain the collateral in satisfaction of the obligations. *Schultz v. Delaware Trust Co.*, 360 A.2d 576 (Del. Super. Ct. 1976). It has also been said that a secured party in possession of collateral must proceed in a commercially reasonable manner toward disposition of the collateral or return it to the debtor. *Michigan National Bank v. Marston, supra*. We do not have occasion to consider these questions. Appellants have claimed only a conversion of the dresses by appellee and have not raised any issue with respect to failure of appellee to

---

[1] Appellant Larissa Keller testified that she inspected the dresses in appellee's possession in July, 1975, and found cockroach and mildew damage on two dresses. The trial court interjected with a comment to the effect that evidence of depreciation in the condition of the dresses was not material to the claim of a conversion the previous September. Appellants did not pursue the subject and offered no further evidence of the condition of the dresses or with respect to any failure of appellee to use reasonable care in their custody and preservation.

[2] The complaint sought foreclosure and sale of all collateral pursuant to the security agreement. The judgment affirmed appellee's rights under the pledge agreement, the security agreement and the Uniform Commercial Code. However, it does not appear that appellee sought to include provisions for disposition of the collateral in the judgment.

dispose of the dresses prior to trial, and the record furnishes no foundation for considering such an issue if it had been raised. We hold that appellee remained a secured party in possession of the collateral at the time of trial, and that nothing in the record permitted a finding that appellee had incurred any liability in that capacity which offset the liability of appellants on the note. We are not in a position to explore any problems which may be involved in the final settlement of the rights and obligations of the parties in relation to the dresses.

We conclude, therefore, that the judgment should be affirmed as to amounts other than attorney's fees. No findings of fact were made by the trial court, and no evidence is contained in the record, with respect to the value of the services of appellee's counsel. In its conclusions of law the court determined that appellee is entitled to attorney's fees of $2,704 "under the Pledge Agreement". The award of attorney's fees has been challenged by appellants.

The pledge agreement to which the trial court referred is dated contemporaneously with the note and purports to transfer to appellee, as security for the note, 200 shares of the stock of appellant corporation. Provision is made for the exercise of voting rights by appellee and with respect to control of the corporation, and for the sale of the stock in the event of default in payment of the secured indebtedness or under the pledge agreement. Appellants agree "in the event of any action or actions being brought in the premises to pay all costs of court and reasonable attorney's fees incurred."

In addition to the provisions for attorney's fees in the pledge agreement, the note provided that, on default and in the event the services of an attorney were retained, appellants would pay all costs of collection including any attorney's fees incurred up to an amount equal to 25% of the amount due and payable. The security agreement provided:

9. All expenses, including reasonable attorney's fees, collector's fees and legal expenses, which Secured Party may incur in protecting, enforcing or exercising its interests, rights or remedies hereunder or in connection with the collateral, shall be paid by Debtor to Secured Party

upon demand, shall constitute a portion of the indebtedness and shall bear interest until paid at the rate of twelve per cent (12%) per annum, all of which obligations shall be additional charges upon the collateral and equally secured thereby.

At the trial, appellee's counsel advised the court that attorney's fees were predicated upon the security agreement and not upon the promissory note. In response to objections from appellants' counsel, the court stated that a violation of the security agreement had been found. No showing was made with respect to the time or value of the services rendered by appellee's counsel, but the sum of $2,704 was found by the court to be a reasonable attorney's fee. The source of that figure is not disclosed by the record.

It is not necessary for us to consider which of the various instruments referred to might properly have been relied upon by the trial court in awarding attorney's fee. This question has not been briefed or argued on this appeal, although it well may require consideration on remand.

Appellants here challenge the attorney's fee award solely upon the absence of any showing of the reasonable value of the services of appellee's counsel. We have recently reaffirmed that: "Attorney's fees provided by contract or statute must be reasonable . . . . and must have been reasonably and necessarily incurred by the party seeking the award." *Jenkins v. Wise*, 58 Haw. 592, 604, 574 P.2d 1337, 1345 (1978). The standards of proof required are set forth in *Sharp v. Hui Wahine, Inc.*, 49 Haw. 241, 413 P.2d 242 (1966). Because of the total absence of supporting evidence in the present record, the award of attorney's fees fails to meet these standards.

The judgment is affirmed, with the exception of the award of attorney's fees which is vacated. The case is remanded for further proceedings consistent with this opinion.

*Ralph E. Corey* for defendants-appellants.
*Joseph M. Gedan* for plaintiff-appellee.