TREPTOW CO., A NEBRASKA CORPORATION,
APPELLANT AND CROSS-APPELLEE, V.
DUNCAN AVIATION, INC., ET AL.,
APPELLEES AND CROSS-APPELLANTS,
NBC LEASING CO., APPELLEE.

313 N.W.2d 224

Filed December 4, 1981. Nos. 43559, 43672.

Patrick H. McDonnell for appellant.

Ginsburg, Rosenberg, Ginsburg, Cathcart, Curry & Gordon for appellees Duncan Aviation et al.

Knudsen, Berkheimer, Beam, Richardson & Endacott for appellee NBC Leasing.

Heard before BOSLAUGH, CLINTON, BRODKEY, and WHITE, JJ., and HOWARD, District Judge.

BOSLAUGH, J.

These appeals, which have been consolidated, arise out of a controversy concerning the sale of a Beechcraft Baron airplane. On April 26, 1974, the plaintiff, Treptow Co., entered into an equipment acquisition agreement with the defendant NBC Leasing Co., which was in substance a lease-purchase agreement. The agreement provided for monthly payments of $2,040 over a 6-year period with an option to the lessee-purchaser to purchase the airplane by payment of the "principal balance" due as shown on an amortization schedule.

The airplane was sold by the defendant Duncan Aviation, Inc., but since the sale was financed through the lease-purchase method, the title to the airplane was conveyed to the leasing company. The plaintiff purchaser's credit was not adequate to satisfy the leasing company, so it obtained a recourse agreement from the seller. The recourse agreement was a guarantee by the

seller of the payments due from the plaintiff under the equipment acquisition agreement and gave the seller the "right to exercise Lessee's purchase option."

On November 25, 1975, after numerous defaults by the purchaser, the leasing company notified the purchaser by mail that it had repossessed the airplane and would dispose of it at its "offices" after December 2, 1975. The leasing company then made demand on the seller on the recourse agreement. The seller paid the amount due, $90,637.44, to the leasing company on December 5, 1975, and took a bill of sale to the airplane.

The defendants Harry O. Barr and J. Robert Duncan are officers and employees of the seller. Harold Treptow, the president of the plaintiff, had a conversation with Barr on December 8, 1975, concerning the airplane. Although the evidence is in conflict, Treptow testified that the plaintiff was given until May 5, 1976, to reimburse the seller for the amount plus interest it had paid to the leasing company. During this time the seller would use the airplane in its charter operations for which the plaintiff would be reimbursed. The seller would pay for the insurance on the airplane and the plaintiff would pay for its maintenance.

In March 1976 the seller sold the airplane in Canada for $110,000 without any further notice to the plaintiff. Between December 8, 1975, and March 1976, the airplane had been flown in charter use approximately 70 hours and the plaintiff had been charged $1,900 for maintenance. The plaintiff produced evidence that the airplane had a value of $140,000 to $144,000 at the time it was sold.

This action was commenced on February 17, 1977. The second amended petition, which the plaintiff denominated as one for "civil conspiracy," alleged that the sale of the airplane in March 1976 without notice to the plaintiff violated Neb. U.C.C. § 9-504 (Reissue 1971); that the value of the airplane was $140,000 and the sale was not commercially reasonable; that the defendants had attempted to deprive the plaintiff of its

right of redemption under the Uniform Commercial Code; and that the plaintiff had been damaged by loss of the use of the property in charter operations. The plaintiff sought to recover damages in the amount of $150,000.

At the close of the plaintiff's evidence the trial court found as a matter of law there was no evidence of a civil conspiracy and dismissed the petition as against the leasing company. The trial court overruled the motions to dismiss made by the other defendants and the trial proceeded as to them.

The jury returned a verdict in favor of the plaintiff and against the defendants in the amount of $29,410.88. All of the parties filed motions for a new trial, which were overruled. They then filed notices of appeal.

The plaintiff contends the trial court erred in dismissing the petition as against the leasing company and in finding there was no evidence of a civil conspiracy.

There was no evidence in this case of concerted action to accomplish an unlawful or oppressive object, or a lawful object by unlawful or oppressive means. See *Dixon v. Reconciliation, Inc.*, 206 Neb. 45, 291 N.W.2d 230 (1980).

Although the leasing company and the seller both took action which might result in the plaintiff's loss of its right of redemption, the plaintiff was in default under the acquisition agreement and the defendants were entitled to protect their rights and avoid a loss caused by the plaintiff's default.

The recourse agreement was not illegal and did not prejudice the plaintiff's rights in the airplane. The plaintiff was not a party to the recourse agreement, and after the seller reimbursed the leasing company and took a bill of sale to the airplane, the plaintiff's rights were the same as if no transfer had occurred.

In *Reeves v. Associates Financial Services Co., Inc.*, 197 Neb. 107, 247 N.W.2d 434 (1976), we noted that a transfer of repossessed collateral to a seller by a finance company pursuant to a guaranty is not a sale or dis-

position of the collateral. In the *Reeves* case we said at 115, 247 N.W.2d at 439: "Section 9-504(5), U.C.C., qualifies the characterization of certain transfers of repossessed collateral, providing: 'A person who is liable to a secured party under a guaranty, indorsement, repurchase agreement or the like and who receives a transfer of collateral from the secured party or is subrogated to his rights has thereafter the rights and duties of the secured party. Such a transfer of collateral is not a sale or disposition of the collateral under this article.' This subsection clarifies who has the rights and duties of a secured party when a seller and a finance company have a guaranty or repurchase agreement on a contract which has been assigned to the finance company."

The order dismissing the petition as to the defendant NBC Leasing Co. was not erroneous.

The defendants Duncan Aviation Inc., Harry O. Barr, and J. Robert Duncan contend the trial court erred in failing to sustain their motions to dismiss and in allowing the trial to proceed against them after the trial court had determined there was no evidence of a conspiracy.

The gist of an action for civil conspiracy is not the conspiracy charged but the damages the plaintiff claims to have suffered because of the wrongful acts of the defendants. If damages are shown to have resulted from the wrongful act of one or more of the defendants, then the plaintiff may recover against such defendants even though there is no proof of a conspiracy. The rule was stated in *Trebelhorn v. Bartlett*, 154 Neb. 113, 116-17, 47 N.W.2d 374, 378 (1951), as follows: "In an action for damages based upon a conspiracy to defraud, such as that at bar, the damages and not the unlawful confederation is the gist of the action, so that if damages are shown to have resulted to plaintiff from wrongful acts or misrepresentations of defendants or any of them, then a judgment against such defendants may be sustained without establishing a conspiracy among

them all. Dunbier v. Mengedoht, 119 Neb. 706, 230 N.W. 669; Harvey v. Harvey, 75 Neb. 557, 106 N.W. 660; Commercial Union Assurance Co. v. Shoemaker, 63 Neb. 173, 88 N.W. 156; Booker v. Puyear, 27 Neb. 346, 43 N.W. 133.

"As stated in Annotation, 152 A.L.R. 1147: 'It has been frequently pointed out that, speaking broadly, there is no such thing as a civil action for conspiracy, the action being for damages caused by acts committed pursuant to a formed conspiracy, rather than the conspiracy itself, so that, unless something is actually done by one or more of the conspirators which results in damage, no civil action will lie against anyone. See, for example, 11 Am Jur 577, Conspiracy, § 45. Thus, in most cases the gist of such an action is the wrongful conduct resulting in the plaintiff's damage, and proof of a conspiracy is of no consequence except as bearing upon the rules of evidence, * * * or to bring within the ambit of liability someone who may have conspired but who did not actively participate in the conduct itself. In such cases failure to prove an allegation of conspiracy does not affect the plaintiff's right to recover, there being sufficient independent grounds for recovery, although it limits those against whom recovery may be had to persons actively participating in the conduct complained of, and whose acts, as regards time, substance, and result, in fact united to produce the injury.'"

The defendants contend, however, that it was a violation of the pretrial order to permit the trial to proceed against them after it had been determined there had been a failure of proof of a conspiracy.

The original petition filed by the plaintiff included a second cause of action based on a theory of breach of contract. On July 15, 1977, the plaintiff was given leave to file a separate action within 10 days. An order entered on September 29, 1978, recited that it was stipulated by the *plaintiff* and *defendant NBC Leasing Company* that "plaintiff is proceeding on theory of

tortious civil conspiracy."

A pretrial conference was held on January 11, 1980. The pretrial order, filed April 30, 1980, listed, in addition to issues relating to the alleged conspiracy, the following separate controverted and unresolved issues remaining to be determined:

"j. Whether the written notice given to the plaintiff was reasonable.

"k. Whether there was a sale of the aircraft and, if so, whether such sale was commercially reasonable.

"l. The amount of the plaintiff's damages, if any."

At a conference in chambers at the beginning of the trial, the plaintiff stated that, in addition to the question as to whether a conspiracy existed, there would be a question as to whether the wrongful acts of individual defendants had injured the plaintiff. Mention was made of a second action then pending between the plaintiff and the defendant Duncan Aviation, Inc., which involved alleged violations of the Uniform Commercial Code and the same transaction. The plaintiff conceded that the result of the trial in this case would dispose of some of the issues in the second case. The defendants made no objection at that time.

When the motions to dismiss all of the defendants except the leasing company were overruled, the defendants did not claim surprise and there was no request for a continuance.

In view of the state of the record, we are unable to find that the trial court abused its discretion in ordering the trial to proceed as against all defendants except the leasing company.

Finally, the plaintiff contends it should have been allowed prejudgment interest. The plaintiff argues that surplus realized on the sale of collateral is a liquidated amount which entitles the plaintiff to prejudgment interest.

In this case the plaintiff did not proceed on the theory of an action to recover surplus realized on the sale of collateral. The plaintiff alleged it was damaged by

defendant's failure to notify it that the airplane would be sold and because the sale was not commercially reasonable. Here the damages were not liquidated and the evidence did not furnish data which, if believed, made it possible to compute the damages with exactness. The plaintiff was not entitled to prejudgment interest.

There being no error, the judgment of the District Court is affirmed.

AFFIRMED.