795 P.2d 890

**CIT FINANCIAL SERVICES,**
Plaintiff–Respondent,

v.

**HERB'S INDOOR RV CENTER, INC.,**
Defendant–Appellant,

and

**B & B Homes Corp., dba Teton Homes,**
Third-party Defendant.

No. 17578.

Court of Appeals of Idaho.

June 5, 1990.

Dial, Looze & May, Pocatello, for defendant-appellant.  John K. Looze argued.

Reginald R. Reeves, Idaho Falls, for plaintiff-respondent.

SWANSTROM, Judge.

This is the second appeal in a guaranty case.  In earlier proceedings, CIT Financial Services (CIT), the secured creditor, was granted partial summary judgment on a guaranty executed by Herb's Indoor RV Center (Herb's RV).  On appeal, a special panel of this Court reversed the summary judgment and remanded the case to resolve disputed material facts.  *CIT Financial Services v. Herb's Indoor R.V. Center*, 108 Idaho 820, 702 P.2d 858 (Ct.App.1985).  On remand, the district court found that CIT disposed of the travel trailer in a commercially reasonable fashion and was entitled to the deficiency under the guaranty.  Herb's RV appealed again.  This Court

must now decide whether the district court erred, as a matter of law, in holding the guarantor liable to the creditor for the deficiency.  We affirm.

The following facts have led to this second appeal.  In November 1979, Rand and Deborah Hughes (buyers) purchased a travel trailer from Herb's RV.  The buyers obtained financing from CIT for the purchase.  They signed a contract (security agreement) naming Herb's RV as seller, which Herb's RV contemporaneously assigned to CIT.  The buyers were then required to make their monthly payments to CIT.  CIT paid Herb's RV for the contract but required Herb's RV to guarantee payment "of each installment when due ... and payment of the unpaid balance upon demand ... if Customer defaults."

For several months the buyers made payments to CIT.  However, in July 1980, they notified CIT that no further payments would be made until substantial defects in the trailer—existing at the time of purchase—were remedied.  In accordance with its guarantee Herb's RV stepped in to make the payments to CIT between August 1980 and April 1981.[1]  Subsequently, CIT demanded that Herb's RV continue paying the installments.  Herb's RV refused and demanded that CIT repossess and sell the trailer.

On January 27, 1982, CIT repossessed the travel trailer and delivered it to Herb's RV.  The next day CIT wrote Herb's RV and demanded payment of $13,035.90 as the "net payoff" of the buyers' contract, in accordance with the guaranty.  Herb's RV refused to pay the amount demanded, giving as its reason CIT's nine-month delay in repossessing the trailer.  In October 1982, CIT filed its "Complaint on Guarantee" against Herb's RV.  In addition to its answer and counterclaim, Herb's RV filed a third-party complaint against the buyers of the trailer and against the manufacturer.  In May 1983, the district court granted summary judgment to CIT on its complaint,

1. In the meantime, the buyers filed an action against Herb's RV for rescission of the contract and for return of payments, plus costs and attorney fees.  Herb's RV filed an answer and counterclaim and a third-party complaint against the manufacturer of the trailer.  The disputes among these parties were eventually settled.

but did not decide the issues raised by the counterclaim and third-party complaint. CIT proceeded to execute on its judgment, directing the sheriff to seize and sell the travel trailer which was still in possession of Herb's RV. After the sheriff's sale, Herb's RV tendered the balance of the judgment, CIT's costs and fees and filed the first appeal. A special panel of this Court reversed the summary judgment and remanded the case to resolve disputed material facts. The special panel held that the district court should not have certified the summary judgment as final because of the need to resolve the issues raised by the counterclaim and third-party complaint.

Following remand, CIT and Herb's RV stipulated to most of the facts recited above. They again submitted the controversy to the district court to decide questions of law. The court issued its memorandum decision holding that Herb's RV was liable to CIT on the guaranty agreement. Implicitly, the court ruled against Herb's RV on its counterclaim. Because Herb's RV had paid and satisfied the earlier judgment in 1983, before the first appeal, the district court's final judgment, as amended May 9, 1988, showed no further sums due. Nevertheless, Herb's RV brought this second appeal to seek recovery of the "deficiency," costs, and fees that it was forced to pay following the earlier summary judgment.

■■■ An unconditional guaranty is a promise by the guarantor to pay the debt or perform the obligation upon default without requiring the secured party to first exhaust its remedies against the debtor. *Commercial Credit Corp. v. Chisholm Bros. Farm Equipment Co.*, 96 Idaho 194, 525 P.2d 976 (1974); *Gebrueder Heidemann, K.G. v. A.M.R. Corp.*, 113 Idaho 510, 746 P.2d 579 (Ct.App.1987) (review denied). When the guaranty is unconditional, the guarantor cannot imply limitations upon the lender's right to recover. Folsom, LENDER V. GUARANTOR: RIGHTS AND OBLIGATIONS UNDER THE "UNCONDITIONAL" GUARANTY, 2 Me. B.J. 172 (May 1987). Plain and unambiguous terms dictate the intent of the parties and the obligations guaranteed. *Johnson Equipment, Inc. v. Nielson*, 108 Idaho 867, 702 P.2d 905 (Ct.App.1985); *see also Industrial Investment Corp. v. Rocca*, 100 Idaho 228, 596 P.2d 100 (1979), *appeal after remand* 102 Idaho 920, 643 P.2d 1090 (1981).

■■ The guaranty agreement entered into between Herb's RV and CIT stated:

I [Herb's RV] guarantee payment to you [CIT] of each installment when due under this contract and payment of the unpaid balance upon demand and all other obligations of Customer if Customer defaults, *without first requiring that you proceed against Customer or that you perfect or ensure enforceability of the Customer's obligations or security.* I ... waive notice of its acceptance and any defaults thereunder.... If I default under this guaranty and you refer this Guaranty to an attorney for collection, I will pay your attorney's fees (15% of the amount in default, if not prohibited by law), court costs and disbursements. (Emphasis added.)

By this language Herb's RV unconditionally agreed to pay CIT the installments due upon default by the buyers. However, Herb's RV refused to honor the guaranty instead demanding that CIT proceed against the debtor and repossess the trailer. Eventually, as we have stated, CIT repossessed and delivered the trailer to Herb's RV lot.

Herb's RV contends that CIT is not deserving of any deficiency judgment after the sheriff's sale because of the nine-month delay in repossessing the trailer. This argument ignores the fact that the guaranty was unconditional. Under its terms, CIT had no duty to repossess the collateral before looking to Herb's RV for payment. The argument is not persuasive.

Herb's RV also argues that the sheriff's sale did not constitute a commercially reasonable disposition of the trailer in light of two prior offers to purchase the trailer for $14,000 and $10,000. This argument is made in light of the following stipulated facts. As noted earlier, CIT repossessed the trailer and delivered it to Herb's RV sales lot on January 27, 1982. The next

day CIT wrote Herb's RV demanding payoff of the defaulted contract according to the guaranty. Ten months later—after CIT filed this action—Herb's RV wrote CIT that it had received an oral offer of $14,000 for the trailer. Herb's requested CIT "to release the title and sell it." CIT responded immediately that it was willing to release the title upon payment in full of all sums due. The letter said that Herb's RV may sell the trailer "at any time, for any sum, but remains responsible for the entire balance, pursuant to the guaranty." It is not disputed that CIT then claimed $14,200, including accrued interest, was due as the payoff on the contract. This sale did not occur. Two months later, in January 1983, CIT received a written offer of $10,000 from a prospective purchaser who was apparently referred to CIT by Herb's RV. CIT responded that Herb's RV and not CIT had the trailer for sale. A copy of this letter was sent to the attorney representing Herb's RV. This sale did not take place.

In April 1983, the district court entered summary judgment for CIT. A writ of execution was issued and the sheriff was directed to sell the trailer. Herb's RV was the purchaser at the sale for $6,000. To avoid further executions, Herb's RV paid the remaining balance due on the judgment and filed the first appeal.

The first appeal was from a summary judgment and this Court was required to view the record most favorably to Herb's RV. This Court suggested that it was necessary for the trial court to determine whether the sheriff's sale was a commercially reasonable disposition of the collateral by CIT in light of all of the circumstances related earlier. On remand, the trial court dutifully made findings on this issue, holding that the disposition was commercially reasonable. The trial court did not base its decision solely on this ground however. The trial court correctly perceived that the events preceding the sheriff's sale were determinative.

■ The district court held that by transferring the collateral to Herb's RV, CIT was relieved of its duty to dispose of the trailer in a commercially reasonable manner. The district court agreed with CIT's arguments that a "transfer of collateral" occurred within the meaning of I.C. § 28-9-504(5):

(5) A person who is liable to a secured party under a guaranty, indorsement, repurchase agreement or the like and who receives a transfer of collateral from the secured party or is subrogated to his rights has thereafter the rights and duties of the secured party. Such a transfer of collateral is not a sale or disposition of the collateral under this chapter.

When the seller guarantees the underlying debt of the purchaser to the finance company, "it is the seller who has the rights and duties of a secured party when the finance company repossess collateral and transfers it to the seller pursuant to the repurchase agreement or *guaranty*." (Emphasis added.) *Reeves v. Assoc. Financial Services Co., Inc.*, 197 Neb. 107, 247 N.W.2d 434, 439 (1976). *See also Treptow Co. v. Duncan Aviation, Inc.*, 210 Neb. 72, 313 N.W.2d 224 (1981); *Stoppi v. Wilmington Trust Co.*, 518 A.2d 82 (Del.1986); *Erickson v. Marshall*, 115 Idaho 847, 771 P.2d 68 (Ct.App.1989). "The purpose of section 9-505(5), U.C.C., is to insure that the value of repossessed collateral is measured by a bona fide sale in the marketplace...." *Reeves v. Assoc. Financial Services Co., Inc.*, 247 N.W.2d at 439. Here, it is apparent that Herb's RV was in a better position to sell the repossessed trailer at a fair market price than was CIT. We agree with the district court that CIT did nothing to this point impairing the value of the collateral. After delivering the collateral and making a demand for payment, CIT waited nine months before suing on the guaranty. This afforded Herb's RV more than a reasonable time to dispose of the collateral before incurring litigation expenses.

■ Herb's RV next argues that it was unable to sell the trailer to other customers during this time because CIT refused to transfer title along with possession of the collateral. A "transfer of collateral" oc-

curs under I.C. § 28–9–504(5) regardless of delivery of title. Section 28–9–202 states: "Each provision of this chapter with regard to rights, obligations and remedies applies whether title to collateral is in the secured party or in the debtor." When notified of a potential sale for $14,000, CIT stated that it was "perfectly willing to release the certificate of title, upon payment in full of all sums due." The district court concluded that CIT had this right under the terms of the contract—including the guaranty—signed by Herb's RV. We agree. According to the record before us, Herb's RV could have discharged the debt to CIT at this time for $14,200. Moreover, Herb's RV has not shown that CIT frustrated a $14,000 sale of the collateral by insisting on its rights. A more reasonable view is that by refusing to contribute $200 of the $14,-200 it owed to CIT, Herb's RV frustrated a sale that CIT was "perfectly willing" to allow. The district court correctly decided that Herb's RV could have avoided this problem simply by performing its obligation under its contract with CIT. As this Court held in *Gebrueder Heidemann, K.G., v. A.M.R. Corp., supra*, a guarantor's interests are best safeguarded upon default by paying the debt and taking prompt action against the debtor or others against whom the guarantor or secured party may have had a right of action.

Finally, we agree with the district court's order awarding attorney's fees to CIT. Since CIT was successful on both the district and appellate court levels in an action against the guarantor, CIT is entitled to attorney's fees incurred in an action to collect on the guaranty. *Idaho First Nat. Bank v. Wells*, 100 Idaho 256, 596 P.2d 429 (1979); *Bank of Idaho v. Colley*, 103 Idaho 320, 647 P.2d 776 (Ct.App.1982) (review denied). CIT has requested an award of fees incurred in this appeal. Herb's RV has objected to any such award relying upon a clause in the guaranty as a limitation upon the amount of fees which can be awarded in this action. Because it is not disputed that the maximum allowable fees were awarded in the trial court, we believe no attorney fees are awardable on appeal.

The judgment of the district court granting the deficiency to CIT is affirmed. Costs to respondent CIT. No attorney fees awarded.

HART, J. Pro Tem., concurs.

BURNETT, Judge, dissenting.

The dispositive issue—indeed, the only issue remaining after the first appeal in this case—is whether CIT Financial Services has acted in a commercially reasonable manner as required by I.C. § 28–9–504(3). To this question the district court answered "yes." My colleagues have voted to affirm, yet they do not discuss the reasonableness issue directly. For reasons set forth below, I respectfully dissent.

I

Begging the reader's indulgence, I will recount briefly the narrative and procedural facts framing the issue of commercial reasonableness. A retailer (Herb's Indoor RV Center) sold a trailer to buyers (Rand and Deborah Hughes) who borrowed money from a commercial lender (CIT). The lender perfected a security interest in the trailer and obtained the retailer's guaranty that the loan would be repaid. Because the trailer was a "vehicle" governed by the title provisions of title 49, chapter 5, of the Idaho Code, the lender also received the certificate of title. *See* I.C. §§ 49–505, 510.

The buyers later found defects in the trailer, stopped making payments on the loan, and sued for rescission. Their suit was settled. Although the terms of the settlement are not spelled out in the record, the result seems to be that any claim or obligation of the buyers has been resolved; but the retailer's obligation under the guaranty has not been extinguished.

While the buyers' suit was pending, the retailer made several installment payments to the lender pursuant to the guaranty. Eventually, however, the retailer stopped paying and demanded that the lender repossess the trailer. This demand, of course, was contrary to the guaranty agreement, which provided unconditionally

that the lender could look to the retailer for payment of the debt without first trying to collect directly from the buyers or selling the collateral.

Although the retailer's demand for repossession was ill-founded, the lender did in fact repossess the trailer. The lender then placed the repossessed trailer on the retailer's premises, but did not relinquish the certificate of title. Consequently, the retailer had no power to sell the trailer because it could not deliver the certificate. *See* I.C. § 49–502. The retailer's role in disposing of the collateral was limited to contacting prospective new buyers and requesting the lender to participate in a sale by releasing the certificate.

That, precisely, is what the retailer attempted to do. It found a prospective new buyer at a price of $14,000, but the lender refused to release the certificate of title unless the retailer first paid a balance of approximately $14,200 on the underlying loan. The retailer subsequently found another buyer at a price of $10,000, but the lender again refused to release the certificate of title unless it was paid in full. The trailer eventually was sold for $6,000 at a sheriff's sale after the lender sued the retailer under the guaranty. The lawsuit then focused on liability for the deficiency. The retailer resisted such liability, arguing that the lender had not disposed of the repossessed trailer in a commercially reasonable fashion.

The district court awarded the lender a deficiency judgment, but the judgment was reversed by a special panel of our Court. *See CIT Financial Services v. Herb's Indoor RV Center,* 108 Idaho 820, 702 P.2d 858 (Ct.App.1985) (*CIT I*). The special panel unanimously held that the lender, having repossessed the trailer and having retained the certificate of title, had a duty to make a commercially reasonable disposition of the trailer. The case was remanded specifically for "an inquiry into the commercially reasonable aspect of CIT's disposition of the collateral." *Id.* at 822, 702 P.2d at 860.

The district court on remand found that the lender had acted in a commercially reasonable manner. This finding, however, was based on an assumption—explicitly stated by the district judge—that the lender had a legal right to demand payment under the guaranty while simultaneously holding title to the repossessed trailer and refusing to sell it for any amount less than the total debt. That assumption, as we shall see, is critical to the outcome of this case.

## II

Today my colleagues do not question the district court's assumption, nor do they expressly hold that the lender acted reasonably under I.C. § 28–9–504(3). Rather, their opinion seems to declare that the lender merely acted within its rights under the guaranty agreement. The opinion also suggests that the lender did not actually refuse to sell the collateral; rather, its act of placing the trailer on the retailer's lot constituted a "transfer of collateral" to the retailer within the meaning of I.C. § 28–9–504(5). Both of these approaches are, in my view, fatally flawed.

### A

I turn first to the suggestion that a "transfer" occurred under subsection (5) of I.C. § 28–9–504. This subsection is part of the statute generally defining a secured party's right to dispose of collateral after default and specifying the effect of such a disposition. The statute provides that a secured party may sell or otherwise dispose of the collateral; that the proceeds of the disposition must be applied to the debtor's account; that the disposition may be made by public or private proceedings; and that such a disposition of the collateral "transfers to a purchaser for value all of the debtor's rights therein [and] discharges the security interest. . . ."

Subsection (5) sets forth an exception to this rule of discharge. It provides that if the person receiving the collateral is also liable to the secured party, then "[s]uch a transfer of collateral is not a sale or disposition of the collateral under this chapter." The evident purpose of subsection (5) is to preserve the security interest for a trans-

feree who may proceed in subrogation to collect the underlying debt from the original debtor.

So understood, subsection (5) does not serve the purpose ascribed to it by the majority opinion in the present case. The opinion seems to say that the lender's placement of the repossessed trailer on the retailer's lot was a "transfer" under this subsection, leaving the retailer in a position to dispose of the trailer without the lender's participation. But subsection (5) does not give a transferee any greater power of sale than the secured party enjoyed. As noted above, no one could sell the trailer under title 49, chapter 5, Idaho Code, without delivering a certificate of title. Here, the lender held the certificate and refused to relinquish it. The lender thereby retained control over any sale of the collateral. Physical placement of the trailer on the retailer's lot, unaccompanied by the certificate of title, did not constitute a genuine "transfer" of the collateral.

My colleagues assert that a "transfer" could occur without passage of an instrument of title. They rely upon the general language of I.C. § 28–9–202, which provides that "[e]ach provision of this chapter with regard to rights, obligations and remedies applies whether title to collateral is in the secured party or in the debtor." My colleagues' reliance is misplaced. Section 28–9–202 was included in the Uniform Commercial Code to avoid a conceptual dispute under pre-Code law as to whether a secured party has title to the collateral or merely a lien upon it. It also gives a secured party flexibility in disposing of repossessed property—e.g., by long-term lease rather than sale. *See generally First City Bank–Farmers Branch v. Guex*, 659 S.W.2d 734 (Texas Dist.Ct.App.1983). But section 28–9–202 cannot be read fairly to authorize an illusory "transfer" under I.C. § 28–9–504(5), in which the transferor retains control over the collateral and its eventual disposition. Neither can section 28–9–202 be read to mean that a purported transferee could re-sell a "vehicle" without delivering a certificate of title as required by other provisions of state law. The Uni-

form Commercial Code does not displace such other provisions. *See* I.C. § 28–1–103.

Where, as here, the collateral is a "vehicle" for which a certificate of title is required, it can be sold or transferred by a secured party only when the certificate is delivered. *See Sunnyland Employees' Federal Credit Union v. Fort Wayne Mortgage Co.*, 182 Ga.App. 5, 354 S.E.2d 645 (1987). Here, there was no genuine transfer by the lender under I.C. § 28–9–504(5). The lender effectively retained control of the collateral until the sheriff's sale occurred.

### B

Thus, the proper focus in this case, as noted by the special panel in *CIT I*, is upon the commercial reasonableness of the lender's actions after repossessing the trailer. The majority opinion skirts this issue, apparently holding that the lender had no duty to make a commercially reasonable disposition because it could insist upon full payment pursuant to the unconditional guaranty. Concededly, the agreement says that the lender is not required to proceed against the debtors or the collateral before collecting from the guarantor. But there is no language in the guaranty agreement saying that if the lender does repossess the collateral, it may refuse to sell or may sell in an unreasonable manner.

Guaranty instruments are strictly construed. A guarantor's obligations are limited to those expressly recited in the guaranty instrument. *McGill v. Idaho Bank & Trust Co.*, 102 Idaho 494, 632 P.2d 683 (1981); *Johnson Equipment, Inc. v. Nielson*, 108 Idaho 867, 702 P.2d 905 (Ct.App. 1985); *Gulf Chemical Employees Federal Credit Union v. Williams*, 107 Idaho 890, 693 P.2d 1092 (Ct.App.1984). Here, the guaranty instrument contains no waiver of the right to insist upon a commercially reasonable sale if repossession occurred. No such waiver can be implied. *See Walter E. Heller & Co., Inc. v. Wilkerson*, 627 P.2d 773 (Colo.Ct.App.1980).

In any event, the special panel in *CIT I* observed that a secured party's duty to dispose of collateral in a commercially rea-

sonable manner is not waiveable by a debtor. *See* I.C. § 28–9–501(3)(b). By applying this nonwaiver statute to the instant case, the special panel implicitly held that the retailer, as a guarantor, was entitled to the same protection as a debtor under I.C. § 28–9–501(3)(b). This implicit holding is consistent with I.C. § 28–9–105(1)(d), which broadly defines a "debtor" as a person "who owes payment or other performance of the obligation secured...."

It is well settled in most jurisdictions that a guarantor is a "debtor" entitled to notice of any proposed sale of the collateral. *See generally* Sachs and Belgrad, *Liability of the Guarantor of Secured Indebtedness After Default and Repossession under the Uniform Commercial Code: A Walk on the Wild Side by the Secured Party,* 5 U. BALT. L. REV. 153 (1976). The courts are divided on whether the guarantor also is entitled to a commercially reasonable sale. The better reasoned cases, however, recognize such an entitlement unless the guaranty is wholly unrelated to the debtor's pledge of collateral. 9 R. ANDERSON, UNIFORM COMMERCIAL CODE § 9–504:94 (1985). Here, the guaranty was an integral part of the transaction in which the trailer was sold and the lender's security interest was created. Consequently, the special panel in *CIT I* was on solid ground in treating the retailer-guarantor as a debtor entitled to a commercially reasonable sale when the lender repossessed the trailer.

This brings us, at last, to the dispositive issue on which the special panel remanded this case: whether the lender complied with the commercial reasonableness requirement. As noted earlier, the district judge answered this question in the affirmative; but his answer was based upon an assumption that the lender, having repossessed the trailer, was legally entitled to insist upon full payment of the secured indebtedness before participating in any sale. In essence, the district court allowed the lender to proceed in part against the collateral—repossessing it without selling it—while simultaneously proceeding against the debtor-guarantor on the debt itself. On this point, I believe the district court erred.

The Uniform Commercial Code provides that a secured party may proceed directly against an obligor on the debt *or* may seek to collect the debt by disposing of the collateral. These remedies are described as "cumulative." I.C. § 28–9–501(1); *Snake River Equipment Co. v. Christensen,* 107 Idaho 541, 691 P.2d 787 (Ct.App.1984) (review denied). It is one thing, however, to say that a secured party may employ more than one remedy in order to collect a debt; it is quite another to say that the creditor may employ multiple remedies *simultaneously.* The principle of commercial reasonableness is offended when a secured creditor grabs property, not to satisfy the debt or to credit the debtor's account, but simply to hold the property as leverage while demanding full payment. As noted by two distinguished commentators on the Uniform Commercial Code:

> The remedies may be "cumulative," but at some point the secured creditor must choose which remedy he will utilize and pursue that route to fruition. In other words, a secured creditor may first attempt to enforce his rights by one method and if that proves unsuccessful follow another one, but we think he should not be permitted to harass the debtor by simultaneously pursuing two or more of the several avenues of attack open to him.

J. WHITE & R. SUMMERS, UNIFORM COMMERCIAL CODE 572 (3d ed.1988) (footnotes omitted).

Thus, the secured creditor has an array of available remedies which he may choose to employ in any sequence. But once the creditor repossesses the collateral, he cannot refuse to sell it; he must take it in satisfaction of the debt or dispose of it in a commercial reasonable manner and credit the debtor's account. *Insurance Company of North America v. General Electric Credit Corp.,* 119 Ariz. 97, 579 P.2d 601 (Ct.App.1978); *Ayares–Eisenberg Perrine Datsun, Inc. v. Sun Bank of Miami,* 455 So.2d 525 (Fla.Dist.Ct.App.1984); *ITT Terryphone Corp. v. Modems Plus, Inc.,* 171

Ga.App. 710, 320 S.E.2d 784 (Ct.App.1984); *Keller v. La Rissa, Inc.*, 60 Haw. 1, 586 P.2d 1017 (1978). A commercially reasonable disposition may include a judicial sale after the collateral has been repossessed, so long as the sale is not unduly delayed and the repossession has been undertaken for the legitimate purpose of preserving the property for sale. *See generally Native Alaskan Reclamation and Pest Control, Inc. v. United Bank Alaska*, 685 P.2d 1211 (Alaska 1984); *Kimura v. Wauford*, 104 N.M. 3, 715 P.2d 451 (1986).

Regardless of whether the sale is private or judicial, the policy of the Uniform Commercial Code is to produce the maximum recovery from disposition of any collateral that has been repossessed. 1A P. COOGAN, SECURED TRANSACTIONS UNDER THE UNIFORM COMMERCIAL CODE § 8.04[2][a] (Hogan rev. ed.1986). In the present case, it appears that such recovery was not maximized. After foregoing apparent opportunities to sell the trailer for $14,000 or $10,000, the lender finally caused it to be sold for $6,000.

I cannot determine from the record, however, whether this failure to maximize was entirely the fault of the lender. For example, when the retailer found a buyer at $14,000, and the outstanding debt was approximately $14,200, the lender might have insisted on payment of the entire debt from the retailer's funds before any sale could be closed; on the other hand, the lender might have been willing to participate in a three-way closing at which the retailer could have discharged the debt by simply adding $200 to the sale proceeds. In either event, the lender would have been wrong to refuse a sale; but in the latter instance, the lender's misconduct would have been matched by the retailer's obduracy.

Consequently, although I regret prolonging this case with a second remand, I would send the case back with an instruction that the district court determine—in factual detail—whether the lender acted unreasonably and, if so, whether the retailer suffered any compensable damage. This, in substance, is what the special panel told the district judge to do on remand in *CIT I.*

The special panel's directive was not followed because the district judge erroneously believed the guaranty agreement absolved or altered the lender's duty to dispose of the repossessed trailer in a commercially reasonable manner. Unfortunately, the majority opinion today perpetuates that error.