### In re Mason HAMILTON.

### Mason HAMILTON, Plaintiff,

### v.

### MOORE FLYING, INC. and Cindy Morton, Defendants.

### Bankruptcy No. 96–10043 S.
### Adv. No. 96–1012.

United States Bankruptcy Court,
E.D. Arkansas,
Batesville Division.

June 11, 1996.

Jeffrey Hance, Batesville, AR, for Plaintiff/Debtor.

Hal Hunter, New Madrid, MO, for Defendants.

David Coop, Chapter 13 Trustee, N. Little Rock, AR.

### *FINDINGS OF FACT AND CONCLUSIONS OF LAW*

MARY D. SCOTT, Bankruptcy Judge.

THIS CAUSE is before the Court upon the trial on the complaint compel turnover of assets, filed on April 30, 1996. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a), 1334. This is a "core proceeding" within the meaning of 28 U.S.C. § 157(b) as exemplified by 28 U.S.C. § 157(b)(2)(E). Hamilton seeks turnover of his airplane from Moore Flying, Inc. who currently possesses the plane. In addition,

in the main case, Moore Flying filed a motion for relief from the automatic stay and Cindy Morton, Moore Flying, Inc.'s shareholder, objects to the debtor's amendment of Schedule D.

Mason Hamilton operates Swift Flying Service, a crop dusting operation. In May 1994, he purchased a 1979 D Gulfstream Schweizer AG–Cat model AMG–164D aircraft from H.P. Moore. Moore, a long-time friend of Hamilton and owner of Moore Flying, arranged financing through the First State Bank and Trust Company ("the bank"). Hamilton executed a Security Agreement granting a security interest in the plane to the bank and Moore guaranteed the debt. Sometime after the purchase of the airplane, H.P. Moore died, his estate being administered by Cindy Morton who also inherited the stock of Moore Flying.

In the spring of 1995, the plane's engine was damaged, necessitating repair by Turbines, Inc. in Indiana. After repair, the plane was released to Hamilton pending payment to Turbines by Hamilton's insurance company. Upon experiencing further problems with the engine, Hamilton delivered the plane to Turbine's shop in West Memphis, Arkansas for additional repairs, where it remained, pending payment of the materialman's lien. Without the airplane, Hamilton could not generate sufficient income to make the payment due on September 1, 1995, to the bank.

The bank sought payment on the debt from Cindy Morton, the owner of Moore Flying, who paid the loan on December 4, 1995. Morton also paid the debt to Turbines, Inc., obtained a Bill of Sale from the bank, and took possession of the airplane. Accordingly, the bank submitted to the Federal Aviation Administration ("FAA") a "Certificate of Repossession of Encumbered Aircraft" averring that it had repossessed the aircraft and therefore divested Hamilton of title to the aircraft. The bank and Turbines, Inc. also submitted releases of their liens to the FAA. By these documents, Moore Flying claims that the bank foreclosed upon Hamilton's interest in the airplane such that, upon sale to it, Moore Flying became the owner of the airplane, rather than a secured party.

On February 14, 1996, Hamilton filed this Chapter 13 case, claiming ownership of the airplane. His Chapter 13 plan proposes to pay Moore Flying as a secured creditor. The debtor testified regarding the feasibility of the plan and the necessity for possession of the aircraft for a successful reorganization. The debtor later amended Schedule D of the petition to include Cindy Morton, the owner of Moore Flying, Inc., as a secured creditor by virtue of her transaction with the bank.

■ The first issue for the Court is whether Moore Flying is the owner of the aircraft or merely a secured party in the bankruptcy case. Although all aircraft must be registered with the FAA, the validity of conveyances of aircraft are subject to state law rules of decision. 49 U.S.C. § 44108(c). Registration with the FAA is not evidence of ownership nor proof of a foreclosure of any secured interest in aircraft. *See* 49 U.S.C.Appx. § 1401(f). Rather, the registration provides for FAA oversight and provides notice of security interest in a form of highly mobile collateral. *See generally Feldman v. Chase Manhattan Bank*, 368 F.Supp. 1327 (S.D.N.Y.1974). Thus, documents submitted to the FAA merely record a purported transfer of interest, but do not transfer the interest, nor create or validate title to the aircraft.

In order for the bank to have properly transferred an ownership interest in the airplane, it was required to follow the remedies under the note, security agreement and, as required by those documents, Missouri law. The note and security agreement provide for the bank to follow any remedy provided under state or federal law. The security agreement further provides that reasonable notice under the Uniform Commercial Code is ten days written notice to the debtor.

■ Under Missouri law, the bank was required to follow the Uniform Commercial Code ("U.C.C.") which permits the secured creditor to dispose of the collateral in collection of the debt. V.A.M.S. §§ 400.9–501, 400.9–503, 400.9–504. Section 400.9–504(3) requires the creditor to provide reasonable notice of the sale to the debtor. However,

under the UCC, the creditor can transfer good title even if notice is defective, if the purchaser at the private sale takes in good faith without notice of any of the defects. The bank's failure to provide notice may constitute a waiver of its right to pursue a deficiency judgment, *Commerce Bank of St. Louis v. Dooling,* 875 S.W.2d 943 (Mo.Ct. App.1994), but does not necessarily affect the purchaser's title in the collateral. However, under section 400.9–504, the affirmative duty of good faith under section 400.1–203, is imposed upon the purchaser at a private sale, the lack of which will affect the transfer of title.

In the instant case, it is uncontroverted that the bank failed to provide any notice of the sale to the debtor. The bank simply "sold" the airplane to Moore Flying and submitted the necessary documents to the FAA. There is no evidence that the bank even attempted to comply with the requirements of the U.C.C. Accordingly, there is a significant defect in the transaction, which calls into question the good faith of the purchaser. In the instant case, the purchaser of the airplane was not a stranger to the transactions, but an integral part of the transactions from their inception and thus had knowledge of them. Moore Flying, the nominal purchaser of the airplane, was owned by the guarantor of the debt. Morton, the beneficiary and owner, was cognizant of the transactions, knew where and how to obtain possession of the airplane, and did so. Moreover, the parties were well acquainted with each other, the debtor being a long-time friend of H.P. Moore. Indeed, at one point in the trial, the debtor even referred to Morton as "Miss Cindy." As either the estate of H.P. Moore or Moore Flying was obligated on the note to the bank, she believed it to be in her best interest to pay the debt and take possession of the plane. In light of the significant involvement in these transactions, not merely as a purchaser, the Court finds it difficult to believe that she was unaware of the lack of notice to the debtor such that she cannot claim good faith within the meaning of V.A.M.S. § 400.9–504. That is, since the sale did not conform to the requirements of the statute, the purchaser in this private sale can take good title only if there is good faith. V.A.M.S. § 400.9–504(4)(b) (purchaser at a private sale takes title even though the secured party fails to comply with notice requirements if the purchaser acts in good faith); *Thomas v. Price,* 975 F.2d 231 (5th Cir.1992). Inasmuch as the Court finds that there is a lack of good faith in the purchase of the airplane, Moore Flying merely purchased the bank's security interest in the airplane, but did not obtain valid title to the airplane. *See* V.A.M.S. § 400.9–504(4)(b). *See also* V.A.M.S. § 400.9–504(5).[1] Inasmuch as Moore Flying, Inc. is not the owner of the subject airplane, but rather, holds a secured claim in this bankruptcy case, it is

**ORDERED:** that the defendants shall turnover the 1979 D Gulfstream Schweizer AG–Cat model ·AMG–164D aircraft to the debtor.

**IT IS SO ORDERED.**

---

1. Alternatively, since the bank did not send notice of the sale to the debtor, it may have thought it was proceeding under V.A.M.S. § 400.9–504(5). This section provides that "A person who is liable to a secured party under a guaranty ... who receives a transfer of collateral from the secured party ... has thereafter the rights and duties of the secured party. Such a transfer of collateral is not a sale or disposition of the collateral under this article." Thus, the transaction between the bank and Moore Flying would, again, merely transfer the secured interest rather than title. *See Murray v. Payne,* 437 So.2d 47, 53 (Miss.1983); *Treptow Co. v. Duncan Aviation, Inc.,* 210 Neb. 72, 75–76, 313 N.W.2d 224, 227 (Neb.1981) The problem with this theory, however, is that the purchasing entity, Moore Flying, was not the guarantor. The guarantee was executed by H.P. Moore, individually.