ORFINGER, J.
Michael P. Spellman, as Trustee for the Shuaney Irrevocable Trust (“SIT”), appeals from a final summary judgment in favor of Independent Bankers’ Bank of Florida (“IBBF”). SIT argues that IBBF was not entitled to summary judgment because IBBF sold or otherwise disposed of the collateral for several loans, and was therefore limited to seeking a deficiency judgment. We disagree and affirm.
Between September 2004 and August 2007, IBBF made a series of five loans to SIT and others.[1] As security for the loans, SIT pledged 365,151 shares of stock (“Shares”) that it owned in Beach Community Bancshares, Inc. (“BCB”) as collateral, and delivered the pledged Shares to IBBF. In 2008, SIT defaulted on the loans by failing to make timely interest and principal payments. Subsequently, IBBF and SIT entered into a forbearance agreement, under which IBBF agreed not to exercise its default remedies in exchange for periodic payments by SIT. SIT further agreed that the Shares would secure each of the five loans. SIT defaulted on the forbearance agreement and refused IBBF’s demand for payment. As a result, at IBBF’s direction, BCB cancelled the certificates for the Shares and issued new certificates in the name of a wholly-owned subsidiary of IBBF. Thereafter, IBBF offered to sell the Shares to the public, providing the minimum price that IBBF set was satisfied. Apparently, there were no takers.
IBBF filed suit against SIT, seeking damages, injunctive and other relief. SIT responded, seeking, among other things, a declaration that the delivery of the Shares to IBBF satisfied its debt. IBBF filed a motion for summary final judgment, asserting that there was no dispute as to the amounts owed on each of the loans, that each of the loans were in default, and that the Shares were pledged as collateral and cross-collateralized under the forbearance agreement. IBBF further argued that it was permitted to hold the Shares and to simultaneously seek judgment on the notes and guarantees. SIT opposed IBBF’s summary judgment motion, arguing that IBBF was not entitled to a final summary judgment because (1) there were material facts in dispute regarding the value of the Shares transferred to IBBF’s subsidiary, and (2) IBBF had elected its remedy by taking ownership of the Shares, and thus, could not pursue a money judgment upon the notes; instead, IBBF could only pursue a deficiency judgment. The trial court granted summary judgment in favor of IBBF.[2]
*507 In its rehearing motion, SIT argued that summary judgment was not proper because IBBF “otherwise disposed” of the Shares under section 679.610, Florida Statutes (2009), when it transferred the Shares to its subsidiary, and IBBF was thus required to prove there was a deficiency in order to obtain a money judgment. SIT further contended that IBBF had unreasonably retained possession of the Shares in violation of section 679.620(6), Florida Statutes (2009), and was deemed to have accepted the collateral in full satisfaction of the debt. After the trial court denied SIT’s rehearing motion, this appeal followed.
Whether summary judgment was properly granted is a question of law that we review de novo. See The Fla. Bar v. Greene, 926 So.2d 1195, 1200 (Fla.2006). In doing so, we consider whether any genuine issues of material fact exist and whether the trial court erred in its application of the law. See Volusia Cnty. v. Aberdeen at Ormond Beach, L.P., 760 So.2d 126, 130 (Fla.2000). On appeal, SIT again contends that by having new certificates for the Shares issued to one of its subsidiaries, IBBF “otherwise disposed” of the collateral for the loans under section 679.610, Florida Statutes (2009),[3] and cannot also obtain a money judgment against SIT. Rather, IBBF can only obtain a deficiency judgment if it can demonstrate to the trial court that the fair market value of the Shares was less than the amount of the debt as of the dates of dispositions. We disagree.
Under Article 9 of the Uniform Commercial Code (U.C.C.), as codified in section 679.609(1), Florida Statutes (2009), a secured party, such as IBBF, may take possession of collateral after a debtor’s default. The secured party then “may sell, lease, license, or otherwise dispose of any or all of the collateral in its present condition or following any commercially reasonable preparation or processing.” § 679.610(1), Fla. Stat. (2009) (emphasis added). While the U.C.C. does not define the phrase “otherwise dispose,” it is generally agreed that a secured creditor’s transfer of collateral, such as stock, to the creditor itself, does not constitute a disposition under the U.C.C. See, e.g., Fletcher v. Cobuzzi, 499 F.Supp. 694, 698-99 (WD.Pa.1980); Sports Courts of Omaha, Ltd. v. Brower, 248 Neb. 272, 534 N.W.2d 317, 322 (1995); see also IFG Leasing Co. v. Gordon, 776 P.2d 607, 613 (Utah 1989); 10 Anderson U.C.C. § 9-504:191 (3d ed.) (“The surrender of the collateral stock and reissuance of the shares in the name of the creditor is not an ‘other disposition’ within UCC § 9-504 ....”). These authorities hold that the U.C.C. reference to “disposition” connotes a transfer for value of the creditor’s rights to the collateral and does not contemplate a creditor’s transfer of title to itself.[4] See, e.g., Fletcher, 499 *508 F.Supp. at 698-99. In fact, section 679.619(3), Florida Statutes (2009), specifically provides that “[a] transfer of the record or legal title to collateral to a secured party ... is not of itself a disposition of collateral under this chapter and does not of itself relieve the secured party of its duties under this chapter.”
No good reason has been advanced why this rule should not apply when a creditor in possession of collateral transfers it to a wholly-owned subsidiary, as here; Indeed, a transfer of record or legal title to a secured party prior to the exercise of its disposition remedies under Article 9 merely puts the secured party in a position to pass legal or record title to a transferee at foreclosure; a secured, party who has obtained record or legal title retains its duties with respect to enforcement of its security interest, and the debtor retains its rights as well. § 679.619(3), Fla. Stat. (2009) & Official Cmt. 2. We conclude that IBBF did not “otherwise dispose” of the Shares within the meaning of section 679.610 when it transferred title of the Shares to its wholly-owned subsidiary. See, e.g., 395 Lampe, LLC v. Kawish, LLC, No. C12-1503RAJ, 2014 WL 221814, at *6 (W.D.Wash. Jan. 21, 2014) (“The UCC thus either expressly permits a secured party to take full ownership of collateral (‘record or legal title’) without effecting a ‘disposition,’ or, at a minimum, it does not prohibit a secured party from doing so.”); In re Mach I Aviation, Inc., BAPs CC-10-1520-MKBPA, CC-10-1521-MkBPa, 2011 WL 5838520, at *5 (B.A.P. 9th Cir. Sept. 15, 2011) (“Generally speaking, foreclosure and transfer of title must be accomplished by a sale, lease or other disposition of the collateral, or by compliance with the strict foreclosure procedures in Article 9.”); cf. Williams v. Regency Fin. Corp., 309 F.3d 1045, 1049 (8th Cir.2002) (determining that term “disposition” under Missouri’s version of U.C.C. included permanent transfer without title by lender of repossessed vehicle to affiliated corporation for less than market value without creditor having first obtained repossession title; terms “sale” and “disposition” are not intended to be synonymous, and disposition of collateral need not necessarily be in form of sale).
Further, contrary to SIT’s position, IBBF is entitled to a money judgment for the full amount of the indebtedness, and is not restricted to seeking a deficiency judgment. The U.C.C. provides that once default has occurred, a secured creditor is authorized to take or retain possession of the collateral. § 679.609(1)(a) & (2), Fla. Stat. (2009). The U.C.C. does not require IBBF to elect a remedy. IBBF is authorized to pursue a judgment against SIT for the default while simultaneously repossessing the Shares.- Under section 679.601(l)(a), Florida Statutes (2009), after a debtor defaults, a secured party may reduce a claim to judgment, foreclose, or otherwise enforce the claim. The secured party’s rights are cumulative and may be exercised simultaneously. § 679.601(3), Fla. Stat. (2009). These provisions allow a secured creditor to repossess collateral while concurrently suing to enforce a debt. See 68A Am. Jur. 2d Secured Transactions § 443 (2014). Thus, IBBF may obtain a money judgment for the full amount due and then proceed to dispose of the collateral. See SFG Commercial Aircraft Leasing, Inc. v. N59CC, LLC, No. 3:09 CV 101 PPS, 71 U.C.C. Rep.Serv.2d 309, 2010 WL 883764 (N.D.Ind.2010); see also Banc of Am. *509 Leasing & Capital, LLC v. Walker Aircraft, LLC, Civil No. 09-1277 (JNE/AJB), 2009 WL 3283885, at *3 (D.Minn. Oct. 9, 2009) (finding U.C.C. provisions 9-601(a) and (c) expressly permit plaintiff to obtain money judgment for full amounts due on loans even though plaintiff possessed aircraft, which was secured as collateral after default); Ctr. Capital Corp. v. JR Lear 60-099, LLC, 674 F.Supp.2d 569, 572-73 (D.Del.2009) (same); Ctr. Capital Corp. v. Marlin Air, Inc., No. 07-15128, 2008 WL 937491, at *5 (E.D.Mich. Apr. 7, 2008) C‘[T]he Court finds Plaintiffs position, that it can simultaneously obtain a money judgment and foreclose its lien, to be supported by the express terms of the contract, the applicable caselaw, and the UCC.”); 68A Am. Jur. 2d Secured Transactions § 445 (2014) (“A secured creditor may take any action or combination of actions until the debt is satisfied, subject to the limitation that the creditor can obtain only one satisfaction of the debt.”).[5]
For these reasons, we affirm tfye judgment.
AFFIRMED.
PALMER and BERGER, JJ., concur.

. We collectively refer to all of the borrowers as "SIT.” The record and briefs identify the others as the "Schweizer Affiliated Persons,” which included Jeffrey L. Schweizer, as the Trustee of SIT; and his successor in interest, Michael P. Spellman, as the Trustee of SIT; Jeffrey L. Schweizer, as an individual; William Todd Schweizer, as an individual; WJT Investments; JT Whit, Inc.; Signature Building Limited Partnership; Schweizer Family Limited Partnership; Schweizer Family, Inc.; Schweizer & Schweizer Limited Partnership; Shuaney Corporation; and Schweizer Brothers Investments, LLC. Other than Jeffrey L. Schweizer, as the Trustee for SIT, and his successor-in-interest, Michael P. Spellman, as the Trustee of SIT, defaults were entered against each of the other defendants, who are not parties to this appeal.

. The final judgment also provided that:
E. Pursuant to the terms of the Loan Documents and Florida law, any proceeds received by Plaintiff from the sale of any of the 365,151 shares of BCB shall be applied to the amounts owed Plaintiff under this Final Judgment....
F. Pursuant to the terms of the Loan Documents and Florida law, if this Final Judg *507 ment is fully satisfied, Plaintiff shall return any remaining Collateral to Michael P. Spellman, as Trustee of the Shuaney Irrevocable Trust....

. The version of section 679.610, Florida Statutes (2009), formerly section 679.504(2), Florida Statutes (2001), in force at the time of this transaction, tracked the language of U.C.C. § 9-610, formerly U.C.C. § 9-504, in all important respects. Similarly, section 679.620, Florida Statutes (2009), formerly section 679.505, Florida Statutes (2001), tracked U.C.C. § 9-620 (formerly U.C.C. § 9-505). Thus, we seek guidance in the decisions of other jurisdictions that have decided this issue by applying their own statutes enacting U.C.C. § 9-610 (formerly U.C.C. § 9-504(1), (3)) as well as U.C.C. § 9-620 (formerly U.C.C. § 9-505(2)). See United States v. Whitehouse Plastics, 501 F.2d 692, 694-95 (5th Cir.1974).

. For this reason, SIT's reliance on Weiner v. American Petrofina Marketing, Inc., 482 So.2d 1362 (Fla.1986) (determining that when cred *508 itor makes improper sale of collateral, creditor is not barred from obtaining deficiency judgment against debtor but in computing amount of deficiency, fair value of collateral must be credited against debt), is misplaced.

. The secured creditor has an array of available remedies that he may choose to employ in any sequence. But once the creditor repossesses the collateral, he cannot refuse to sell it; he must take it in satisfaction of the debt or dispose of it in a commercially reasonable manner and credit the debtor’s account. See, e.g., Burley v. Gelco Corp., 976 So.2d 97, 100 (Fla. 5th DCA 2008); Keller v. La Rissa, Inc., 60 Haw. 1, 586 P.2d 1017, 1020 (1978). A commercially reasonable disposition may include a judicial sale after the collateral has been repossessed, so long as the sale is not unduly delayed and the repossession has been undertaken for the legitimate purpose of preserving the property for sale. See generally Native Alaskan Reclamation & Pest Control, Inc. v. United Bank Alaska, 685 P.2d 1211, 1224 (Alaska 1984); Keller, 586 P.2d at 1020; Kimura v. Wauford, 104 N.M. 3, 715 P.2d 451, 454-55 (1986); cf. Std. Bank & Trust Co. v. Callaghan, 177 Ill.App.3d 973, 127 Ill.Dec. 186, 532 N.E.2d 1015, 1019-21 (1988) (finding that sale of collateral was not commercially reasonable because secured party had engaged in mistaken practice, i.e., relied upon appraisal of collateral that it knew or ought to have known was too low when it purchased collateral at judicial sale for $50,000 under collateral’s fair market value).